**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| SYDNEY NICOLE LLC | § | |
| AND SYDNEY NICOLE | § | Case No.: 1:24-cv-00423 |
| GIFFORD, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | Jury Trial Demanded |
| v. | § | |
| | § | |
| ALYSSA SHEIL LLC AND | § | |
| ALYSSA SHEIL, | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' PARTIAL MOTION TO DISMISS[1] COUNTS 2, 3, 5, 6, 7, & 8 OF PLAINTIFFS' COMPLAINT.

---

[1] The filing of a partial motion to dismiss "triggers Rule 12(a)(4) tolling of time for the defendant to answer." *Banik v. Thomson*, No. 7:16-cv-462, 2017 WL 11713709, at *2 (S.D. Tex. Dec. 11, 2017); *Smith v. General Motors, LLC*, No. 4:23-cv-379, 2023 WL 4849442, at *1 (N.D. Tex. July 7, 2023) (denying motion for default as premature because "Defendant still is entitled to fourteen days after notice of the Court's action" on a partial motion to dismiss). Defendants will answer the remainder of Plaintiffs' claims and bring its counterclaims within fourteen days after notice of the court's action.

## <u>TABLE OF CONTENTS</u>

I.  Count 2: Gifford's complaint does not allege that either Defendant vicariously infringed—it alleges that both Defendants directly infringed. ........................................... 2

II.  Count 3: Gifford fails to state a claim for any Digital Millenium Copyright Act ("DMCA") violations claim under 17 U.S.C. § 1202(b) because she fails to identify a single *identical* image that has been reproduced without Copyright Management Information. ............................................................................................................... 3

    A.  To allege a DMCA claim, a plaintiff must allege the removal or alteration of CMI from the Plaintiff's works............................................................................................ 4

    B.  Because the Complaint only alleges the *creation* of *similar* images—not the *reproduction* of *identical* ones—Gifford's DMCA claim fails as a matter of law. ... 5

III.  Count 5: Because Gifford fails to allege any element of a claim for misappropriation of likeness, that claim should also be dismissed.................................................................... 7

    A.  The Complaint fails to allege that Sheil appropriated Gifford's name or "likeness". 8

    B.  Gifford cannot be identified from Sheil's platforms. ................................................. 10

    C.  Sheil did not obtain a benefit or advantage from the use of Gifford's likeness. ....... 11

IV.  Count 6: Gifford fails to state a claim for tortious interference because she cannot plausibly allege a reasonable probability that any third party would enter a contract with her, nor an intent to interfere. ...................................................................................... 12

    A.  The Complaint fails to plausibly allege a reasonable probability of a business relationship with a third party. ................................................................................. 13

        1.  It is not "reasonably probable" that a business relationship would form with random unspecified "followers" on social media....................................... 14

        2.  Gifford has failed to plausibly allege that any business relationship would be formed "with [Gifford]." ............................................................................ 15

        3.  Gifford has not plausibly alleged a conscious desire to prevent a relationship from occurring or knowledge that interference was certain or substantially certain to occur as a result of their conduct. ................................................ 15

V.  Counts 7 & 8 for unfair competition and unjust enrichment both fail to state a claim. .. 16

    A.  Both claims are preempted by the Federal Copyright Act. ...................................... 16

    B.  Even if it were not preempted, Gifford fails to satisfy the pleading requirements for unjust enrichment. .................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

Other Authorities

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
    166 F.3d 772 (5th Cir. 1999) ................................................................ 17, 18

*Baisden v. I'm Ready Prods., Inc.*,
    2008 WL 2118170 (S.D. Tex. May 16, 2008) ........................................... 19

*Banik v. Thomson*,
    No. 7:16-cv-462, 2017 WL 11713709 (S.D. Tex. Dec. 11, 2017) .................................. i

*Cox v. Hatch*,
    761 P.2d 556 (Utah 1988) ....................................................................... 12

*Daboub v. Gibbons*,
    42 F.3d 285 (5th Cir. 1995) .................................................................... 16

*Doggett v. Travis Law Firm, P.C.*,
    555 S.W.3d 127 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) .......................... 8

*Elvis Presley Enterprises, Inc. v. Capece*,
    950 F. Supp. 783 (S.D. Tex. 1996) ........................................................... 9

*Faloona by Fredrickson v. Hustler Magazine, Inc.*,
    607 F. Supp. 1341 (N.D. Tex. 1985) ......................................................... 10

*Gattoni v. Tibi, LLC*,
    254 F. Supp. 3d 659 (S.D.N.Y. 2017) ....................................................... 4

*Heldenfels Bros. v. City of Corpus Christi*,
    832 S.W.2d 39 (Tex. 1992) ..................................................................... 18

*Henley v. Dillard Dep't Stores*,
    46 F. Supp. 2d 587 (N.D. Tex. 1999) ....................................................... 11

*Kimbrough v. Coca-Cola/USA*,
    521 S.W.2d 719 (Tex. App.—Eastland 1975, *writ ref'd n.r.e.*) ............................ 11, 12

*Matthews v. Wozencraft*,
    15 F.3d 432 (5th Cir. 1994) ........................................................... 7, 8, 9, 11

*Moore v. Big Picture Co.*,
    828 F.2d 270 at 275 (5th Cir. 1987)................................................................. 9

*Prophet Cap. Mgmt., Ltd. v. Prophet Equity, LLC*,
    2009 WL 3199115 (W.D. Tex. Sept. 25, 2009) ...................................... 18, 19

*Recursion Software, Inc. v. Interactive Intel., Inc.*,
    425 F. Supp. 2d 756 (N.D. Tex. 2006) .......................................................... 16

*Shihab v. Complex Media, Inc.*,
    No. 21-CV-6425 (PKC), 2022 WL 3544149 (S.D.N.Y. Aug. 17, 2022)............... 4, 5, 7

*Smith v. General Motors, LLC*,
    No. 4:23-cv-379, 2023 WL 4849442 (N.D. Tex. July 7, 2023) ....................................... i

*Sullivan v. Leor Energy, LLC*,
    2006 WL 2792909 (S.D. Tex. Sept. 27, 2006) ............................................. 19

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
    845 F.3d 652 (5th Cir. 2017) ................................................................... 16, 18

*Waits v. Frito-Lay, Inc.*,
    978 F.2d 1093 (9th Cir. 1992) ......................................................................... 8

Regulations

17 U.S. Code § 1203(b)(5) ........................................................................... 7
17 U.S.C. § 102 ........................................................................................... 17
17 U.S.C. § 106 ........................................................................................... 16
17 U.S.C. § 1202(b) ........................................................................... 3, 4, 6, 7


RESTATEMENT 2D. TORTS §652C (1977) ................................................... 12

## <u>INTRODUCTION</u>

Lacking any real merit to any of her claims, Gifford takes a "throw everything at the wall and see what sticks" approach to pleading her complaint, apparently believing quantity of claim trumps quality. It doesn't. While none of Gifford's allegations have substance, some of them at least pass pleading muster; this motion focuses on the ones that don't: Counts 2, 3, 5, 6, 7, and 8.

Gifford's theory of vicarious liability listed in Count 2 does not state a claim as to Shiel because it attempts to hold Shiel vicariously liable for her own actions, not those of a "third party." It also fails to the LLC because it fails to allege that the LLC "controls" Shiel.

Gifford cannot state a claim under the Digital Millenium Copyright Act because she cannot allege that Shiel took any of Gifford's photos, removed or altered Copyright Management Information, and then re-posted the photos. In fact, Gifford's allegations directly contradict this, calling into question the Rule 11 basis for bringing the claim in the first instance.

Gifford's misappropriation of likeness claim fails for similar reasons: Gifford has not alleged that a likeness has been misappropriated. There is no allegation that Shiel is passing off pictures of Gifford as Shiel. Not one of Shiel's photos can be used to identify Gifford. Again, it strains credulity to believe this claim could have been alleged in good faith in the first instance.

Gifford's tortious interference allegations likewise facially contradict the elements of a claim. Though she does not even manage to allege that it is probable any relationship would form, at most Gifford alleges that relationships would be formed *with Amazon*, not her. Giffords is not Amazon, so her complaint facially screams that these claims too should have never been pled.

Finally, Gifford's Texas-law claims of unjust enrichment and unfair competition are preempted by the Federal Copyright Act. Moreover, her claim of unjust enrichment fails to allege that Shiel obtained anything "from" Giffords. Accordingly, all of these claims should be dismissed.

## ARGUMENT

**I.     Count 2: Gifford's complaint does not allege that either Defendant vicariously infringed—it alleges that both Defendants directly infringed.**

To state a claim of vicarious copyright infringement, a Plaintiff must allege three elements (1) a direct act of infringement by a third party, (2) that the defendant had "supervisory authority over the [third party] infringer," and (3) that the defendant had a "direct financial interest" in the infringement by the third party.[2] Here, though the factual allegations in Gifford's Complaint (if taken as true, which Sheil disputes) can potentially support a claim of **direct** infringement by **each** of the Defendants, they fail to plausibly allege that either Defendant met the elements of vicarious copyright infringement as to the other.

As an initial matter, the Complaint consistently alleges that *both* Defendants committed acts constituting underlying infringement: this fails the first element because the acts must be committed by a third party, not the Defendant themselves. *See* e.g., Dkt. 1 at ¶ 16 ("Defendants, by and through the Instagram account @alyssasheill, have infringed"); ¶ 20 ("Defendants have replicated Plaintiffs' posts") ¶ 24 ("Defendants posted a video."). In other words, the Complaint alleges that these were joint actions taken by both Defendants, but those allegations do not support the particular theory of secondary liability listed in Count 2, so it should be dismissed.

In particular, the first element is not met as to a vicarious claim against Sheil. Read generously, the Complaint attempts to allege that the LLC committed a direct act of infringement and is a "third-party" to Sheil. But LLCs can "act only through the persons connected with it" and cannot have committed an underlying infringing act unless Sheil herself did it. But Sheil is not a

---

[2] *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) (must be third party); *Canada Hockey LLC v. Texas A&M Univ. Athletic Dep't*, 484 F. Supp. 3d 448, 467 (S.D. Tex. 2020), *aff'd sub nom. Canada Hockey, L.L.C. v. Texas A&M Univ. Athletic Dep't,* No. 20-20503, 2022 WL 445172 (5th Cir. Feb. 14, 2022) (elements).

"third-party" to herself. *See Calsep A/S v. Intelligent Petroleum Software Sols., LLC*, No. 4:19-CV-1118, 2020 WL 10759435, at *1 (S.D. Tex. Mar. 2, 2020).

Count 2 also fails as to the LLC because the Complaint does not allege facts supporting the element that the LLC could "supervise or control" Sheil's actions. In fact, it pleads the opposite: stating that the LLC is merely "the vehicle through which Alyssa Sheil conducts her business." Dkt. 1 at ¶ 8. Gifford alleges that Shiel controls the LLC, not the other way around, so this theory fails. Indeed, it is not plausible that a business entity itself can control the single living person who owns it. While the Complaint attempts to state that the LLC had the "right and ability to supervise the infringing **content**", Dkt. 1 at ¶ 48, that is not the test. The Complaint does not allege that the LLC controlled **Shiel,** so these allegations fail.

## II.    Count 3: Gifford fails to state a claim for any Digital Millenium Copyright Act ("DMCA") violations claim under 17 U.S.C. § 1202(b) because she fails to identify a single *identical* image that has been reproduced without Copyright Management Information.

Gifford alleges that Sheil violated the DMCA when she "intentionally created indistinguishable posts from [Gifford's] posts," citing a compilation of posts in an attached exhibit. Dkt. 1 at ¶ 60, Exhibit A. Gifford's claim fails as a matter of law because the allegedly "indistinguishable" posts are facially distinguishable: there is no copy and paste of identical images with a copyright cropping.

This reality is fatal: cases evaluating DMCA violations ubiquitously hold that a claim only passes muster where a plaintiff alleges that a defendant has reproduced or altered an **identical** image or work after the removal of Copyright Management Information ("CMI"), such as a copyright notice.  By contrast, a claim is not viable when a plaintiff merely alleges creation of a new work or image that the plaintiff thinks is "too similar." Because that is exactly what Gifford is claiming here, her allegations fail as a matter of law.

**A. To allege a DMCA claim, a plaintiff must allege the removal or alteration of CMI from the Plaintiff's works.**

To plead a violation under subsection 1202(b) in this case, Gifford would need to allege (1) the existence of CMI on her works; (2) that Shiel intentionally removed or altered that CMI, and (3) that Shiel then "distributed" Gifford's works. *Shihab v. Complex Media, Inc.*, No. 21-CV-6425 (PKC), 2022 WL 3544149, at *4 (S.D.N.Y. Aug. 17, 2022); *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 664 (S.D.N.Y. 2017). CMI includes information accompanying a work such as the title, name of the author, or other categories of identifying information, including the "familiar © copyright notice" often attached to protected works. *Id.* Here, the Complaint does not allege the second or third elements because it fails to allege that Shiel removed anything from or distributed Gifford's works.

In *Tibi*, the trial court denied a motion to dismiss regarding a DMCA 1202(b) claim premised on the reproduction of ***identical*** images. *Id.* The plaintiff alleged that the defendant "copied" a particular photograph, "cropped it" and "omitted" the copyright notice— "©Matilde Gattoni Photography, 2016, All rights reserved"—that the original author had included. *Id.* The *Tibi* court noted that the "familiar © copyright notice" has been held to be CMI, and that because the complaint alleged that the defendant had reproduced the ***identical***, yet cropped, photograph after removing the CMI, the plaintiff had adequately stated a claim. *Id.*

Likewise, in *Shihab*, five photographs of hip-hop artists were at issue. *Shihab v. Complex Media, Inc*., No. 21-CV-6425 (PKC), 2022 WL 3544149, at *2 (S.D.N.Y. Aug. 17, 2022). The plaintiff, a photographer, alleged that the defendant had removed a watermark embedded in each of the five photographs containing CMI: "JAMIL GS ©." *Id.* at *2. Plaintiff further alleged that the defendant intentionally removed and cropped out the watermarks and reproduced the

4

photographs in a copied post. *Id.* Indeed, the complaint included the ***identical*** images with the cropped CMI:



*Id.* at 2 (Images in original, red boxes added for emphasis).

Like *Tibi*, the *Shihab* court found that because the plaintiff alleged that an ***identical*** photograph was reproduced with CMI removed, a claim was properly pled. *Id*. at *6. But Gifford makes no similar allegations.

**B. Because the Complaint only alleges the *creation* of *similar* images—not the *reproduction* of *identical* ones—Gifford's DMCA claim fails as a matter of law.**

In contrast to *Tibi* and *Shihab*, Gifford has not alleged that Sheil "copied" any particular work, nor that any CMI was "altered or removed" from one of her works. Instead, she alleges that Sheil "created indistinguishable posts"; an invented threshold untethered to the DMCA.

Gifford's Complaint and Exhibit A facially demonstrate that her DCMA fails as a matter of law because the so-called "indistinguishable" posts are not reproductions or duplications of any works where CMI has been removed.  As an example:



Dkt. 1 at Exhibit A at 4.

Simply put, this is not an ***identical*** image or work that is protected under the DMCA. To state a claim under §1202(b) Gifford would have to (1) allege that Sheil removed or altered CMI from the first image (she didn't) and (2) allege that Sheil then distributed the altered image (she didn't). *Tibi*, at 664. Neither element is met. Most obviously, because second photograph is plainly a ***different*** photograph.[3] Indeed, the complaint concedes this: acknowledging that Sheil's posts

---

[3] The same is true for all the paired images in the Complaint. Every time, the images are different.

were "**created**" by Sheil. Dkt. 1 at ¶ 60. This ends the inquiry. Creating posts is not a reproduction or re-distribution of original works in a way that could plausibly violate §1202(b). Indeed, throughout their decisions, the *Tibi* and *Shihab* courts noted multiple times that the DMCA protects against the "distributing" or "altering" of a specific image, then passing it off as one's own, but the DMCA does not prohibit the creation of completely different images, as Gifford alleges here. *See generally*, *Tibi* and *Shihab*.

The overarching theme of Gifford's gripe is that she believes Sheil's posts and overall aesthetics are "too similar" to Gifford's. Setting aside the merits of that theory (there are none), it is not a theory that supports a claim under the DMCA. Gifford has completely failed to allege a claim for removal of CMI or reproduction of images under the DMCA. This claim should be dismissed, and no leave to amend should be granted because amendment would be futile as the allegedly "indistinguishable" images are facially different.[4]

## III.    Count 5: Because Gifford fails to allege any element of a claim for misappropriation of likeness, that claim should also be dismissed.

A claim for misappropriation of likeness has three elements "(i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant." *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994). Such appropriation only "becomes actionable when used 'to advertise the defendant's business or product, or for some similar commercial purpose." *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994). Critically, when evaluating claims of misappropriation of likeness, "Texas law applies a very restrictive interpretation of the tort."

---

[4] In addition, after dismissal, Defendants should be awarded their reasonable attorney's fees for their time spent in connection with this claim. 17 U.S. Code § 1203(b)(5).

*Doggett v. Travis Law Firm, P.C.*, 555 S.W.3d 127, 130 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).[5]

### A.      The Complaint fails to allege that Sheil appropriated Gifford's name or "likeness".

To meet the first element, Gifford must show that Sheil appropriated Gifford's name or likeness. *Matthews*, at 437. Here, the Complaint never alleges that Sheil used Gifford's name. Rather, it alleges misappropriation via social media platforms operated under the usernames "Alyssa Sheil," @alyssasheill, and @alyssasheil. Dkt. 1 at ¶ 8. Because the Complaint does not attempt to allege misappropriation of Gifford's name, this element could only be met if it alleges the appropriation of Gifford's legally recognized "likeness." Here, it does not.

Case law defines "likeness" as a term of art that refers to distinctive traits by which a person can be clearly identified, such as her face or distinctive singing voice. *Matthews*, 15 F.3d at 438. Gifford claims Sheil misappropriated her likeness by "imitat[ing] outfits, poses, hairstyles, makeup, and the manner of speaking of [Gifford]," and "obtain[ing] a flower tattoo on her upper arm that is nearly identical to a flower tattoo [Gifford] has on her upper arm." Dkt. 1 at ¶ 75. None of these constitute misappropriation of Gifford's likeness. Indeed, it is not enough to allege that a person looked similar or copied a style or manner of speaking. To allege a claim of misappropriation of likeness, it must be alleged that people who heard Sheil speak or saw her photographs "*believed*" that was in fact Gifford appearing in the posts or speaking. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1101 (9th Cir. 1992).

---

[5] As an initial matter, Plaintiff Sydney Nicole LLC's claim should be dismissed because it is a business entity cannot be a plaintiff for such a claim. *Doggett*, at 132 (Tex. App. 2018) ("Texas courts have not recognized a corporation's right to privacy."). Regardless, the entire claim should be dismissed, because none of the allegations in the Complaint could satisfy any element of this claim.

Simply put, a plaintiff does not state a claim for a misappropriation where she alleges that a defendant imitated her choice of aesthetics. Rather, there must be an allegation that the defendant used the plaintiff's **actual** image, name, or voice to promote their products. *Compare Matthews*, 15 F.3d at 439 (rejecting misappropriation of likeness claim regarding a fictional book based on the plaintiff's life story); *with  Moore v. Big Picture Co.*,  828 F.2d 270 at 275 (5th Cir. 1987) (affirming liability for an "unauthorized use of Moore's name"); *and Elvis Presley Enterprises, Inc. v. Capece*, 950 F. Supp. 783, 801 (S.D. Tex. 1996), *rev'd on other grounds*, 141 F.3d 188 (5th Cir. 1998) (finding misappropriation where owners of The Velvet Elvis nightclub used Elvis's name in its service mark, used ads containing pictures or images of Elvis, and used phrases such as "Elvis has left the building" in its ads). These cases where a misappropriation of likeness claim has survived all share a common theme: the defendant actually used the plaintiff's likeness.

By contrast, Gifford merely alleges that Sheil imitated her aesthetic choices—she wore similar closes and made similar poses. Gifford bases her claims on pictures and videos Sheil has posted of Sheil and Sheil's home—not passing off Gifford or Gifford's home as herself and her own. In Exhibit A to the Complaint, Gifford has attached more than twenty pictures and videos Sheil has posted of herself—using her own likeness—and none that Sheil has posted of Gifford.

The alleged misappropriations—outfits, poses, hairstyles, makeup, manner of speaking, and tattoos—are not legally-protected "likenesses." Legally-protected likenesses include a images of a person's face and a recordings of a singer's distinctive singing voice—traits so distinctive that their owner is "clearly identifiable." *Elvis Presley Enterprises, Inc.*, 950 F. Supp. at 801. It does not follow that Sheil, posting pictures and videos of herself, would be appropriating the likeness of any other person who wears similar makeup or clothes.

Sheil's own unique tattoos are clearly visible in her posts. Though tattoos are not legally-protected likenesses, Gifford claims that Sheil's "nearly identical" flower tattoo constitutes misappropriation. However, Sheil's flower tattoo is distinct from Gifford's: it depicts multiple flowers of different species; Gifford's depicts one rose. If Gifford claims a tattoo constitutes a likeness—meaning that it is so distinct that a person could be clearly identified from it—she must also concede that Sheil's distinct likeness can be identified by the differences in that tattoo.[6]

Sheil's platforms clearly portray only her own likeness, and not Gifford's. They depict hundreds of images of Sheil's own face and person, her home, and her belongings. Indeed, in many of the allegedly "infringing posts," Sheil is wearing a necklace with a large "A" on it, referencing her own name, Alyssa. *E.g.*, Ex. A at 3, 14, 16, 33. On top of that, *each and every post is made under one of Sheil's own internet usernames*; in other words, even if Sheil makes similar aesthetic choices as Gifford, she cannot not become identifiable as Gifford because the account self-identifies as Sheil. Sheil remains clearly identifiable as only herself. Pictures and videos of Sheil therefore cannot contain Gifford's likeness, and Gifford cannot meet the first element of this claim.

**B.  Gifford cannot be identified from Sheil's platforms.**

To meet the second element, Gifford must show that she can be identified from Sheil's posts. *Faloona by Fredrickson v. Hustler Magazine, Inc.*, 607 F. Supp. 1341, 1360 (N.D. Tex. 1985), *aff'd*, 799 F.2d 1000 (5th Cir. 1986) ("The public must be able to identify the [plaintiff] from the photograph or drawing[.]"). Because there are no photographs or drawings of Gifford on Sheil's platforms, Gifford cannot be identified in Sheil's posts.

---

[6] Further, Sheil is also identifiable by a numeric tattoo on her ribcage depicted in one of her videos—a tattoo that Gifford does not have. Ex. A at 38. By Gifford's own standard, Sheil's tattoos highlight the clearly-identifiable differences between their likenesses.

Rather, only Sheil is identifiable in her posts. In the videos and images Gifford has attached, it is clear that Sheil and Gifford are two different people. *E.g.*, Ex. A at 33–34. It is plain to see from the Complaint that Sheil is not "a virtually indistinguishable replica" of Gifford. *See* Dkt. 1 at ¶ 75. Their eyes are different colors, they have different features, and they have different voices. They are two different people with two different faces; the photographs appear under different internet usernames. Most importantly, the Complaint merely alleges that Shiel's images *look like* Gifford, not that Gifford herself is actually identifiable from the images—because she is not. Accordingly, this element has not been alleged.

### C. Sheil did not obtain a benefit or advantage from the use of Gifford's likeness.

As explained above, Sheil simply did not use Gifford's name or likeness on so Sheil could not have obtained a benefit from doing so. Moreover, any "benefit" alleged in the Complaint is not the kind of benefit recognized by this cause of action. Accordingly, Plaintiffs cannot meet the third element of their claim.

The "benefit" element requires Gifford to prove that Sheil derived some commercial benefit from the use of plaintiff's name or likeness. *Henley v. Dillard Dep't Stores*, 46 F. Supp. 2d 587, 596 (N.D. Tex. 1999). Typically, this means appropriation of a likeness "becomes actionable when used 'to advertise the defendant's business or product.'" *Matthews* at 437. For example, a football player's image on a Coca-Cola ad diminishes the value of a potential future endorsement by him of a competitor soda company. See *Kimbrough v. Coca-Cola/USA*, 521 S.W.2d 719, 720 (Tex. App.—Eastland 1975, *writ ref'd n.r.e.*) (finding misappropriation where a Texas A&M football star's image was used in a Coca-Cola ad without his consent).

Critically, Texas law "creates property rights [in a person's likeness] **only** where the failure to do so would result in the excessive exploitation of its value." *Matthews* at 437 (emphasis added). For that reason, where a plaintiff fails to establish that their likeness has a unique "intrinsic value,"

it cannot be appropriated for a defendant's benefit. *Kimbrough.* at 596 f.n. 10 (N.D. Tex. 1999) (Citing RESTATEMENT 2D. TORTS §652C (1977); and *Cox v. Hatch*, 761 P.2d 556, 565 (Utah 1988)). Gifford's own allegations undercut this—if another influencer wearing similar gray sweatpants really caused Gifford's online empire to crumble, there can be no plausible allegation that Gifford's likeness or "style" had any unique or intrinsic value in the first place. On top of that, Gifford Admits she and Sheil promote the same products. Dkt. 1 at ¶¶ 17–18 (alleging that both influencers promoted The Tox Shop); ¶¶ 20–21 (alleging that both influencers promoted the same or similar Amazon products including home office décor, a cream Nespresso® machine and rimmed glasses, a nonstick pan set, acrylic calendars, wave-patterned rugs, and round stacking tables); ¶¶ 23–24 (alleging that both influencers posted content promoting the same apparel); ¶¶ 26 (alleging that Sheil's Amazon "Idea Lists" contains "a substantial number of the exact products listed on [Gifford's] list"). There is nothing "unique" or "intrinsic" about it.

There is nothing unique or intrinsic about what Gifford promotes, and Gifford does not gain the value from the promotion.

In summary, because Gifford fails to allege facts supporting any elements of misappropriation of likeness, this claim should be dismissed.

**IV.  Count 6: Gifford fails to state a claim for tortious interference because she cannot plausibly allege a reasonable probability that any third party would enter a contract with her, nor an intent to interfere.**

To state a claim for tortious interference with prospective business relations, a plaintiff must plausibly allege five elements:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party;
>
> (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct;

(3) the defendant's conduct was independently tortious or unlawful;

(4) the interference proximately caused the plaintiff injury; and

(5) the plaintiff suffered actual damage or loss as a result."

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Texas law does not protect amorphous "relations." Rather, to allege a "prospective business relation," a plaintiff prove "a reasonably probably contract that would have been entered into but for the interference." *Id.* at 924. Gifford's allegations fail to plausibly allege either of the first two elements.[7]

## A.   The Complaint fails to plausibly allege a reasonable probability of a business relationship with a third party.

To meet the first element, Gifford must establish that it is "reasonably probable, considering all of the facts and circumstances attendant to the transaction," that she would have entered into a business relationship with a third party. *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 124 (Tex. App.—El Paso 1997, pet. denied). Here, Gifford has failed to plausibly allege that there is a reasonable probability of any business relationship at all; she has not identified who the third parties are or what the business relationships would be. Moreover, even if the Complaint points in the direction of any business relationship being formed, it does not allege that those relationships would be formed with Gifford.[8]

---

[7] In addition to Plaintiffs' allegations of interference with potential customers or "followers," Plaintiffs make a cursory reference to interference with their agreement with Amazon. Dkt. 1 ¶ 83. There are no facts supporting this. Has Amazon terminated its relationship with Plaintiffs? Altered the terms of this unspecified "agreement"? Stopped doing business with Plaintiffs, or even threatened to do so? The Complaint is silent on all of these points.

[8] For the same reason, any claim of interference with "existing relationships" should be dismissed, because no such claim exists under Texas law. To the extent Gifford attempted to plead interference with an "existing contract," she has failed to plead the first element, the existence of a contract with Gifford and her followers that was subject to interference. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

### 1. It is not "reasonably probable" that a business relationship would form with random unspecified "followers" on social media.

To show reasonable probability, "it is not necessary to prove that the contract would have certainly been made but for the interference," but plaintiffs must show that "more than mere negotiations have taken place." *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 124 (Tex. App.—El Paso 1997, pet. denied). In evaluating this element, Texas courts have held that "mere phone calls from potential customers do not reach the level of a reasonable probability that [the plaintiff] would have entered into a business relationship. S*P Midtown, Ltd. v. Urban Storage, L.P.*, No. 14-07-00717-CV, 2008 WL 1991747, at *9 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied). There, the court noted that the plaintiff "did not produce evidence of clients with which it had even begun negotiating, but instead, only produced evidence [the defendant] was diverting phone calls of people inquiring about" the plaintiff's storage facility. *Id.*

Changing the technology medium from telephones to TikTok does not change the legal analysis. Though the technology has changed—and taps on a TikTok screen take the place of phone calls—Gifford's allegations here are, in essence, the same as those in *SP Midtown*, where the alleged diversion led to a "drop in business." *Id.* at *9. Here, Gifford alleges that Sheil confused Gifford's followers by having similar social media accounts, which "caused [Gifford] to lose prospective and existing followers and user engagement." Dkt. 1 at ¶ 83. Missing are any allegations that Gifford ever had any "prospective" or "probable" relationship with any of these "new followers." To the contrary, Gifford does not even identify these followers, much less allege that they knew or contacted any of them or had a framework in place for some kind about the prospect of a business relationship. *SP Midtown*, 2008 WL 1991747, at *9 ("more than mere negotiations must have taken place"). Here, Gifford does not even have a negotiation.

At most, Gifford has alleged that she generally advertises Amazon's products to her followers. Dkt. 1 at ¶ 80. Gifford has not alleged that she has ever spoken with a follower personally, let alone begun entering into a business relationship with one. For these reasons, she has not plausibly alleged that it was "probable" that any business relationship would be formed.

> ### 2.   Gifford has failed to plausibly allege that any business relationship would be formed "with [Gifford]."

Gifford's claims should also be dismissed because they fail to allege that any business relationships would be formed with Gifford; rather, the business relationships (the purchases of items) exist between Amazon and its customers. Dkt. 1 at ¶ 81.

As the Complaint concedes, influencers are paid to advertise Amazon products to potential Amazon customers, by way of making a post with "a link to the product on Amazon." Dkt. 1 at ¶ 27. As alleged by Gifford, any products purchased "are produced and shipped by Amazon." Dkt. 1 at ¶ 31. Gifford does not allege that any follower would purchase anything directly from her or enter any contract with her—these are solely Amazon customers. Accordingly, there is no prospective business relationship with which Sheil could plausibly be interfere.[9]

> ### 3.   Gifford has not plausibly alleged a conscious desire to prevent a relationship from occurring or knowledge that interference was certain or substantially certain to occur as a result of their conduct.

Beyond the bald assertion that "Defendants acted with knowledge that Defendants' conduct was substantially certain to cause interference with the relationship between the Plaintiffs and Plaintiffs' existing and prospective followers and Amazon," Gifford provides no factual allegations to support this element. Dkt. 1 ¶ 84. And the allegations Gifford does make do nothing

---

[9] Gifford claims only an incidental benefit from the fact that she receives commission when people purchase products from Amazon. Dkt. 1 at ¶ 82. But this incidental benefit to the Plaintiff is not a business relationship with Amazon's customer.

to "'nudge' [Gifford's] claims against [Sheil] 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

Specifically, Gifford has tried to establish "knowledge" or "substantial certainty" from the fact that Sheil blocked Gifford from viewing Sheil's Instagram and TikTok accounts. Dkt. 1 ¶¶ 14, 84. That's it. This doesn't establish knowledge or substantial certainty. The Court is not required to make inferential leaps on Plaintiffs' behalf—rather, when the allegations cannot plausibly state the claim, the Court should dismiss it. *League of United Latin Am. Citizens v. Abbott*, No. 121CV988RPJESJVB, 2022 WL 17477565, at *1 (W.D. Tex. Dec. 6, 2022) ("The court does not strain to find inferences favorable to the plaintiffs or accept conclusory allegations, unwarranted deductions, or legal conclusions.") (citation and quotes omitted).

## V.   Counts 7 & 8 for unfair competition and unjust enrichment both fail to state a claim.

### A.   Both claims are preempted by the Federal Copyright Act.

"Section 301 of the Copyright Act preempts state law claims that fall within the general scope of federal copyright law." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 655 (5th Cir. 2017). "Courts generally find that claims for unjust enrichment [] are preempted by the Copyright Act to the extent they are based on a defendant's violation of an exclusive right protected by the copyright law." *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 769 (N.D. Tex. 2006). There is a two-prong test to determine whether the Copyright Act preempts a state law cause of action. *See Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995). First, courts examine the state claim to "determine if it falls within the subject matter of copyright" *Id.* (internal citations omitted). Second, "the cause of action is examined to determine if it protects rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Id.* (internal quotations omitted).

Here, Gifford alleges infringement of copyrighted works itself. *See, e.g.*, Dkt. 1 at ¶¶ 12-13, 16-19, 20-24, 27-28. As such, these works, by definition, fall within the subject matter of copyright as defined by 17 U.S.C. § 102. In addition, Gifford alleges copying of "posts" (*see, e.g.*, Dkt.1 at ¶¶ 25-28), website designs (*see, e.g.*, Dkt. 1 at ¶¶ 29-30), and apparel designs (*see, e.g.*, Dkt. 1 at ¶¶ 31-33). These works fall within the subject matter of copyright as defined in the Act. *See* 17 U.S.C. § 102 (extending copyright protection to "literary works" and "pictorial, graphic, and sculptural works"). Therefore, while Sheil disputes the merits of this claim, it is clear that Gifford has alleged copyright infringement and, thus, any unjust enrichment claim based on those same works falls within the subject matter of copyright defined by 17 U.S.C. § 102.

Courts evaluate the equivalency requirement of the second prong using the "extra element" test. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999). "According to this test, if the act or acts of [defendant] would violate both [the state law claim] and copyright law, then the state right is deemed "equivalent to copyright." *Id.* "If, however, one or more qualitatively different elements are required to constitute the state-created cause of action being asserted, then the right granted under state law does not lie within the general scope of copyright, and preemption does not occur." *Id.* (internal quotations omitted).

Here, the conduct upon which Gifford alleges unjust enrichment serves as the same basis for her copyright infringement claim. Gifford only rehashes the copyright infringement facts for the unjust enrichment cause of action without providing any factual support for the "extra element" that is necessary to distinguish the state claim, and thus, the unjust enrichment claims are preempted by federal copyright law.

The unfair competition claim is preempted as well. Like Gifford's claim for unjust enrichment, her claim for unfair competition solely based on the same allegations that Sheil was

"publishing and promoting infringing works." Dkt. 1 at ¶ 88 (Count 7). As the Fifth Circuit has recognized, a Texas-law claim for unfair competition is an "umbrella" claim that is not truly an independent claim—rather, it must be predicated on another cause of action that is an "independent tort." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). Where the underlying claims of a unfair competition claim are based on a particular federal statute, that federal statute controls the analysis of the state-law claim. *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 763 (N.D. Tex. 2013) (Lanham Act controlled analysis of Texas-law unfair competition claim).

Here, because Gifford's unfair competition claim is based on the same allegations by the Federal Copyright Act, there is no "extra element" needed to prove that claim as compared to the Copyright Infringement claims Gifford is making. For that reason, it is preempted and must be dismissed. *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 823 F. Supp. 2d 578, 586–87 (S.D. Tex. 2011) (Dismissing unfair competition claim as "preempted by the federal Copyright Act" due to the absence of a showing of "a difference between the claims."); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999).

## B. Even if it were not preempted, Gifford fails to satisfy the pleading requirements for unjust enrichment.

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Gifford simply asserts that Gifford has been damaged by Sheil's "unjust enrichment" without alleging facts to support how Sheil has been unjustly enriched by a benefit obtained ***from Gifford***. Gifford does not allege that Shiel received anything ***from*** her, much less, how it was obtained by fraud, duress, or undue advantage.

For these reasons, Gifford's allegations of unjust enrichment are factually insufficient to state a claim for which relief may be granted under Texas law. *See Prophet Cap. Mgmt., Ltd. v.*

*Prophet Equity, LLC,* 2009 WL 3199115, at *2 (W.D. Tex. Sept. 25, 2009) (dismissing claim for unjust enrichment where complaint fails to allege that benefit was obtained by fraud, duress, or undue advantage, or any facts capable of proving the same); *Baisden v. I'm Ready Prods., Inc.*, 2008 WL 2118170, at *11 (S.D. Tex. May 16, 2008) (same); *Sullivan v. Leor Energy, LLC*, 2006 WL 2792909 at *5 (S.D. Tex. Sept. 27, 2006) (same).

## <u>CONCLUSION</u>

For the reasons explained above, Gifford has failed to state a claim for any DMCA violation, misappropriation of likeness, tortious interference with prospective relations, or unjust enrichment. Counts 2, 3, 5, 6, 7, and 8 should be dismissed.

Dated: June 21, 2024                     Respectfully submitted,

                                         */s/ Jason McManis*
                                         _____
                                         Jason S. McManis
                                         State Bar No.: 24088032
                                         Shahmeer Halepota
                                         State Bar No.: 24109968
                                         Sujeeth Rajavolu
                                         State Bar No.: 24127961
                                         Thomas Frashier
                                         State Bar No.: 24126185
                                         **AHMAD, ZAVITSANOS & MENSING, PLLC**
                                         1221 McKinney Street, Suite 2500
                                         Houston, Texas 77010
                                         (713) 655-1101
                                         jmcmanis@azalaw.com
                                         shalepota@azalaw.com
                                         srajavolu@azalaw.com
                                         tfrashier@azalaw.com

                                         ***Attorneys for the Defendants***
                                         **ALYSSA SHEIL, LLC AND**
                                         **ALYSSA SHEIL**