**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| SYDNEY NICOLE LLC | § | |
| AND SYDNEY NICOLE | § | |
| GIFFORD, | § | |
| | § | Case No.: 1:24-cv-00423-RP |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | Jury Trial Demanded |
| ALYSSA SHEIL LLC AND | § | |
| ALYSSA SHEIL, | § | |
| | § | |
| *Defendants.* | | |

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION
TO DISMISS COUNTS 2, 3, 5, 6, 7, & 8 OF PLAINTIFFS' COMPLAINT**

---

# TABLE OF CONTENTS

I.    COUNT 2: Plaintiffs Have Alleged Enough Facts to Support Their Claim That Defendants are Vicariously Liable for Copyright Infringement by Third Parties. ........................ 2

   A.    Plaintiffs have alleged direct acts of infringement by third parties. ................................. 2

   B.    Plaintiffs' pleadings show that Defendants have the right and ability to supervise the infringing content and a direct financial interest in the same. .................................................. 4

III.   COUNT 3: Plaintiffs Have Properly Pled Their Claim Under the DMCA Because a Work Need Not be "Identical." ............................................................................................................... 5

   A.    A work need not be "identical" to be actionable under the DMCA. ................................ 5

   B.    The Complaint has stated facts to show that the DMCA claim is plausible on its face. .... 8

IV.   COUNT 5: Plaintiff Gifford has Adequately Pled Each Element of her Claim for Misappropriation. ......................................................................................................................... 9

   A.    Defendants appropriated Gifford's likeness for the value associated with it. ................... 9

   B.    Gifford can be identified from Defendants' publications. ................................................ 12

   C.    Defendants received a benefit from using Gifford's likeness. .......................................... 13

V.    COUNT 6: Plaintiffs have Adequately Stated Their Claim for Tortious Interference. .... 14

VI.   COUNTS 7 & 8: Plaintiffs have Adequately Stated Their Claims for Unfair Competition and Unjust Enrichment and Neither Claim is Preempted. ........................................................... 15

   A.    COUNT 7: Plaintiffs have adequately stated a claim for unfair competition. ................. 15

   B.    COUNT 8: Plaintiffs have adequately stated a claim for unjust enrichment. ................... 17

i

## **TABLE OF AUTHORITIES**

**Cases**

*A&M Records v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ............................................................. 4, 5

*ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*,
   667 F. Supp. 3d 411 (S.D. Tex. Feb. 2023) ......................................... 6, 7

*Ali v. Playgirl, Inc.*,
   447 F. Supp. 723 (S.D.N.Y. 1978) .......................................................... 11

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
   573 U.S. 431 (2014) .................................................................................. 4

*Ashcroft v. Iqbol*,
   556 U.S. 662 (2009) .................................................................................. 1

*Batra v. PopSugar, Inc.*,
   2019 U.S. Dist. LEXIS 20299, Case No. 18-cv-03752-HSG (N.D. Cal. 2019) ........................ 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................. 1

*Columbia Pictures Indus., Inc. v. Fung*,
   2009 U.S. Dist. LEXIS 122661, Case No. 06-5578-SVW  (C.D. Cal. 2009) ........................ 3, 4

*Computer Mgmt. Assistance Co. v Robert F.DeCastro, Inc.*,
   220 F.3d 396 (5th Cir. 2000) .................................................................. 16

*Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs.*,
   965 F.3d 365 (5th Cir. 2020) .................................................................. 15

*Elvis Presley Enterprises, Inc. v. Capece*,
   950 F.Supp.783 (S.D. Tex. 1996) .......................................................... 10

*Gattoni v. Tibi, LLC*,
   254 F. Supp. 3d 659 (S.D.N.Y. 2017) ...................................................... 6

*Gregson v. Zurich Am. Ins. Co.*,
   322 F.3d 883 (5th Cir. 2003) .................................................................... 1

*Henley v. Dillard Dep't Stores*,
   46 F. Supp.2d 587 (N.D. Tex. 1999) ...................................................... 10

*IMAPizza, LLC v. At Pizza Ltd.*,
  334 F.Supp.3d 95 (D.D.C. 2018) .......................................................... 3

*IMAPizza, LLC v. At Pizza, Ltd.*,
  448 U.S. App. D.C. 231, 965 F.3d 871 (D.C. App. 2020) ............................................ 3

*Matthews v. Wozencraft*,
  15 F.3d 432 (5th Cir. 1994) ......................................................... 9, 10, 12

*Meadows v. Hartford Life Ins. Co.*,
  2006 U.S. Dist. LEXIS 55945 (S.D. Tex. 2006) ..................................................... 10

*Meadows v. Hartford Life Ins. Co.*,
  492 F.3d 634 (5th Cir. 2007) ........................................................9, 10, 13

*MGM Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913, 125 S. Ct. 2764 (2005) ...................................................... 4

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
  498 F.2d 821 (9th Cir. 1974) ........................................................ 11

*Philip Morris USA v. Lee*,
  481 F.Supp.2d 742 (W.D. Tex. 2006) ...................................................... 1

*Shihab v. Complex Media, Inc.*,
  2022 WL 3544149, No. 21-CV-6425 (PKC) (S.D.N.Y. Aug. 17, 2022) ................................... 6

*Victoria Bank & Tr. Co. v. Brady*,
  811 S.W.2d 931 (Tex. 1991) ........................................................ 14

*Waits v. Frito-Lay, Inc.*,
  978 F.2d 1093 (9th Cir. 1992) ...................................................... 12-13

*White v. Samsung Elecs. Am., Inc.*,
  971 F.2d 1395 (9th Cir. 1992) ........................................................ 11

**Statutes**

17 U.S.C. § 101 .......................................................................... 3, 7
17 U.S.C. § 102 ............................................................................ 16
17 U.S.C. § 1202 ......................................................................... 5, 8

**Other Authorities**

RESTATEMENT 2D. TORTS § 652C (1977) .......................................................9

## INTRODUCTION

Plaintiffs Sydney Nicole Gifford and Sydney Nicole LLC ask the Court to deny Defendants' Partial Motion to Dismiss Counts 2, 3, 5, 6, 7, & 8 of Plaintiffs' Complaint. Defendants mischaracterize Plaintiffs' Original Complaint as a "throw everything at the wall and see what sticks" approach in an attempt to distract the Court from the reality that (1) Defendants have plainly ripped off Plaintiffs, and (2) a pleading should contain all good-faith claims to avoid waiving any rights to valid claims, particularly when the case falls within the ambit of the rapidly-evolving creator economy, as this case does. Plaintiffs have adequately alleged facts to state a plausible claim for relief under each of the enumerated counts and respectfully show the Court the following.

## LEGAL STANDARD

At the pleading stage, a court construes a complaint "liberally in favor of the plaintiff, and takes all facts pleaded in the complaint as true." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003). It is well-established that a complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbol*, 556 U.S. 662, 678 (2009). The standard in ruling on a motion to dismiss, then, is "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Philip Morris USA v. Lee*, 481 F.Supp.2d 742, 745 (W.D. Tex. 2006). Given this permissive standard, Plaintiffs' Original Complaint clearly passes muster and Defendants' Partial Motion to Dismiss must be denied in full.

## ARGUMENT

## I.  COUNT 2: Plaintiffs Have Alleged Enough Facts to Support Their Claim That Defendants are Vicariously Liable for Copyright Infringement by Third Parties.

Either as a mistake or as an attempt to divert the Court's attention from the reality of this matter, Defendants assert, with no real support from Plaintiffs' pleading, that Plaintiffs seek to hold Defendant Alyssa Sheil vicariously liable for acts of Defendant Alyssa Sheil LLC, or vice versa. That is not what Plaintiffs have pled. Rather, the plain language of the Complaint clearly shows that Plaintiffs allege that Defendants are both vicariously responsible for acts of infringement by third parties, namely, followers and viewers of Defendants' social media platforms.

In a somewhat confounding series of mental backflips, Defendants allege that Plaintiffs' pleading for vicarious liability fails because Plaintiffs have not set forth each element to hold Defendant Sheil vicariously liable for the acts of Defendant Alyssa Sheil LLC, or vice versa. Indeed, this is not what Plaintiffs have pled.[1] Rather, Plaintiffs have clearly set forth a claim of secondary copyright liability based on infringing acts performed by the third-party viewers and followers of Defendants' platforms, not by either of the Defendant themselves. Defendants' entire discussion of vicarious liability between Alyssa Sheil and Alyssa Sheil LLC, then, is irrelevant. Plaintiffs have alleged each of the elements of vicarious copyright infringement.

### A.     Plaintiffs have alleged direct acts of infringement by third parties.

---

[1] At this early stage of litigation, Plaintiffs have no way of knowing which Defendant owns or controls the Defendants' social media platforms or content posted thereon, or which individual(s) own or control Alyssa Sheil LLC; thus, while Plaintiffs reserve the right to plead such form of vicarious liability as between Defendants, information available to Plaintiffs at this stage leads to the belief that both Defendants have equal control over the platforms.

First, Plaintiffs have alleged a direct act of infringement by a third party by setting forth facts that third party viewers or followers of Defendants' platforms have accessed, downloaded, reproduced, and/or viewed the infringing content posted by Defendants, with some posts exceeding hundreds of thousands of views. The reproduction on an end user's device of a copy of a post that infringes upon Plaintiffs' copyrighted works itself infringes on Plaintiffs' exclusive rights under the Copyright Act.

A copy is defined by the Copyright Act as a "material object . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated", and a work is "fixed in a tangible medium of expression when its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. In the context of transmissions sent via the Internet, a "copy" is made where the receiving device "assembles the transmitted information into a complete image that can be perceived", *see IMAPizza, LLC v. At Pizza Ltd.*, 334 F.Supp.3d 95, 120 (D.D.C. 2018), and "a copy becomes 'fixed' when the picture is reproduced for the viewer." *IMAPizza, LLC v. At Pizza, Ltd.*, 448 U.S. App. D.C. 231, 237, 965 F.3d 871, 877 (D.C. App. 2020). Courts have recognized that "a transmission involves two potentially infringing acts, the unauthorized uploading and the unauthorized downloading of a file, either one of which could create a copy that would constitute" an act of infringement. *Id.* (discussing *Columbia Pictures Indus., Inc. v. Fung*, 2009 U.S. Dist. LEXIS 122661, Case No. 06-5578-SVW, at *8 (C.D. Cal. Dec. 21, 2009), *aff'd in part, vacated in part on other grounds*, *and modified in part*, 710 F.3d 1020 (9th Cir. 2013)).

Defendants' uploading of infringing content on Defendants' platforms enables third-party followers and viewers to reproduce or download copies of the infringing content on their own

screens, which in itself is a "potentially infringing act." *See id.* Plaintiffs have set forth facts alleging that Defendants have (1) uploaded infringing content that copies Plaintiffs' protected work and (2) thereby made it available for streaming, reproducing, and downloading by Defendants' followers and other viewers. Defendants' posts have incurred thousands of views on Defendants' platforms, with some exceeding hundreds of thousands of views. Dkt. 1 at ¶ 22. Longstanding principles of copyright law support this construal. *See, e.g. Columbia Pictures*, 2009 U.S. Dist. LEXIS 122661 at *8 (any unlawful download of a video by a user violates the reproduction right); *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 451 (2014) (streaming of video content violates the public performance right). Plaintiffs have therefore met the pleading standard with respect to the first element of vicarious liability for copyright infringement.

### B.      Plaintiffs' pleadings show that Defendants have the right and ability to supervise the infringing content and a direct financial interest in the same.

Second, Plaintiffs have shown that Defendants had the right and ability to supervise the infringing content. "The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise." *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001). Further, one "infringes vicariously by profiting from direct infringement while declining to exercise the right to stop or limit it." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 918, 125 S. Ct. 2764, 2770 (2005). Plaintiffs have pled, on information and belief, that Defendants have, at all times relevant to this action, controlled Defendants' various social media platforms. Dkt. 1 at ¶ 48. Implicit in this control is the ability to block infringers' access to reproducing the infringing content. Defendants have declined to exercise the right to stop or limit the reproduction of infringing content on viewers' devices; thus, this element has been sufficiently pled.

4

Third, Plaintiffs have clearly pled that Defendants had a direct financial interest in the infringement. "Financial benefit exists where the availability of infringing material acts as a draw for customers." *A&M Records*, 239 F.3d at 1023 (internal citations omitted). Plaintiffs have alleged that Defendants' posts copying Plaintiffs' work appear to receive significantly higher views than Defendants' other posts because the infringing material acts as a draw for consumers. A higher number of views of Defendants' posts correlates to a higher number of clicks to the promoted link for a viewer to purchase the item, resulting in a higher number of sales and commission generated. Therefore, Plaintiffs have clearly stated facts supporting Defendants' direct financial interest in third parties' viewing, reproducing, and infringing on the work.

As such, taking the well-pleaded facts as true, Plaintiffs have adequately alleged that third party followers and viewers of Defendants' content, not party to this lawsuit, have infringed on Plaintiffs' copyrighted work for which Defendants may be held vicariously liable. As a result, Defendants' motion to dismiss Count 2 should be denied.

## II. COUNT 3: Plaintiffs Have Properly Pled Their Claim Under the DMCA Because a Work Need Not be "Identical."

### A.     A work need not be "identical" to be actionable under the DMCA.

In an attempt to dismiss Plaintiffs' claim under the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, Defendants introduce a new element into their definition of a DMCA violation which is not required by the statutory text and is not required in this Circuit. Mysteriously, Defendants rely on two nonbinding, unpersuasive cases from the Southern District of New York to establish their (incorrect) assertion that a claim under 17 U.S.C. § 1202(b) requires "copy and paste of identical images", Dkt. 13 at p. 4, when neither cited case sets forth the requirement that

two works must be "identical" for such a claim. Indeed, neither opinion in *Shihab* nor *Tibi* even mention the word "identical". *See Shihab v. Complex Media, Inc.*, 2022 WL 3544149, No. 21-CV-6425 (PKC) (S.D.N.Y. Aug. 17, 2022); *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659 (S.D.N.Y. 2017). Rather, a sister court has explicitly stated that "[b]ased on the plain wording of the statute, the Court is not persuaded that the DMCA includes an 'identical copy' requirement." *ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.,* 667 F. Supp. 3d 411, 427 (S.D. Tex. Feb. 2023). Thus, Defendants' argument that a DMCA violation necessitates a "reproduction" of an "identical work" fails.

In *ADR Int'l*, plaintiff ADR claimed defendants infringed on ADR's training materials and PowerPoints. *Id.* at 417. ADR alleged that defendants, which performed similar training services as ADR, infringed under the DMCA by copying and distributing ADR's copyrighted materials and removing ADR's copyright management information ("CMI"). *Id.* at 418. Notably, the infringing materials were not "exact" or "identical" replicas of ADR's work but substantial or entire recreations of ADR's work. One example of a cited infringing work is displayed below:



*Id.* ADR claimed that the materials were copies of ADR's protected work with only superficial alterations made by defendants, such as changes to color, size, or font of the materials,

in an attempt to disguise the obvious copying. *Id.* The Magistrate Judge's Report and Recommendation determined that the "fact that Plaintiff pleaded CMI removal, alteration, and/or falsification from 'copies' rather than "identical copies' does not remove it from § 1202's protection", *id.* at 424, citing to the unambiguous language of 17 U.S.C. § 101, wherein "the definition of 'copies' lacks any requirement for an identical copy." *Id.* at 427 (citing 17 U.S.C. § 101). Thus, the court concluded, "the plain wording of the statute" ***does not*** include "an 'identical copy' requirement." *Id.* The court further found that ADR's allegation that defendants placed their name and logo on defendants' works, not ADR's works, was sufficient for purposes of stating a claim under the DMCA. *Id.* at 425. Given that ADR had alleged that defendants had "copied its copyrighted training materials and provided factual bases for the allegation, including providing six side-by-side comparisons of Plaintiff's slides and ISM's allegedly infringing slides", ADR's pleading passed muster. *Id.* at 428.

The same logic applies to the case at hand. Plaintiffs have provided dozens of side-by-side comparisons showing Plaintiffs' copyrighted photo and video works and Defendants' infringing photo and video works and have pled that Defendants' posts copy Plaintiffs' works. Dkt. 1 at ¶ 59 (Defendants "published and distributed unauthorized posts copying Plaintiffs' works under the names 'Alyssa Sheil', '@alyssasheil' or '@alyssasheill'"). Just as defendants in *ADR Int'l* created works that were copies of ADR's protected works with mere superficial alterations, Defendants have copied Plaintiffs' protected works with only occasional superficial alterations, such as the color of a sweatshirt here or the emojis used in a text overlay there. Such efforts are nothing more than a thin veil over Defendants' obvious copying. Therefore, § 1202's protection applies to the works at issue.

**B.      The Complaint has stated facts to show that the DMCA claim is plausible on its face.**

Plaintiffs have sufficiently met the elements of a DMCA claim. First, Plaintiffs have pled that Defendants intentionally removed Plaintiffs' CMI from Plaintiffs' protected works by copying Plaintiffs' works, removing the "Sydney Nicole" or "@sydneynicolegiff" user information, and appending Defendants' own user information. Dkt. 1 at ¶¶ 7, 16, 60-61. For avoidance of doubt, social media usernames and user information may be considered CMI. CMI is defined broadly as "information conveyed in connection with copies . . . of a work" and includes the "name of, and other identifying information about, the author of a work." 17 U.S.C. § 1202(c). Instagram sidebar information has been recognized to constitute CMI for DMCA claim purposes. *Batra v. PopSugar, Inc.*, 2019 U.S. Dist. LEXIS 20299, Case No. 18-cv-03752-HSG, at *4 (N. Dist. Ca. 2019) (denying defendant's motion to dismiss plaintiff's DMCA claim for removing CMI on plaintiff's Instagram posts by copying posts on other social media sites).

Second, Plaintiffs have sufficiently pled that Defendants have copied, published, and distributed posts knowing that Plaintiffs' CMI had been removed. Dkt. 1 at ¶ 60 (Defendants "published and distributed unauthorized posts . . . without any reference to Plaintiffs"). Finally, Plaintiffs have sufficiently pled that Defendants distributed such copies knowing, or having reasonable grounds to know, that it would induce, enable, facilitate, or conceal the infringement of Plaintiffs' rights under the Copyright Act. *Id.* at ¶ 61. Plaintiffs have sufficiently pled Count 3, then, and Defendants' motion to dismiss should be denied.[2]

---

[2] Any request set forth by Defendants for attorneys' fees for time spent in connection with Count 3 (or any other Count) should be denied. With respect to Count 3, any request by Defendants should be denied because Defendants have misconstrued the law and failed to set forth any facts supporting an award of attorneys' fees. Indeed, if Plaintiffs'

### III. COUNT 5: Plaintiff Gifford has Adequately Pled Each Element of her Claim for Misappropriation.

Once again, Defendants frame their entire argument that a claim should be dismissed on a restriction invented by Defendants that applicable law does not actually impose. Defendants' argument in support of their motion with respect to Count 5 for misappropriation boils down to the fact that because Defendants have not used an exact image of Gifford's face, she cannot assert misappropriation of likeness. Dkt. 13 at pp. 8-9. However, applicable law has no such requirement. Indeed, the Fifth Circuit has expressly recognized that a defendant's passing herself off as the plaintiff constitutes an appropriation. In *Meadows v. Hartford Life Ins. Co.*, the Fifth Circuit stated: "Pursuant to the Restatement [of Torts], an appropriation occurs when a defendant 'pass[es] himself off as the plaintiff or otherwise seek[s] to obtain for himself the values or benefits of the plaintiff's name or identity.' 492 F.3d 634, 638 (5th Cir. 2007) (citing RESTATEMENT (SECOND) OF TORTS § 652C cmt. c (1977)). This is exactly what Defendant Sheil has done.

To properly plead a cause of action for misappropriation, a plaintiff must allege "(i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant." *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994). Plaintiff has adequately pled facts supporting all three elements.

### A.    Defendants appropriated Gifford's likeness for the value associated with it.

---

DMCA claim was so meritless, one would question why Defendants chose to invest such effort and time in conducting a full case analysis of two nonbinding, unpersuasive cases to refute the claim.

First, Plaintiff Gifford has alleged that Defendants appropriated Gifford's likeness by seeking to pass Defendant Sheil off as Gifford.[3] Defendants cite *Matthews* to support their claim that a defendant must "actually use" a plaintiff's likeness to constitute misappropriation and attempt to lead this Court to believe "likeness" can only be defined as an individual's face or distinctive singing voice, *see* Dkt. 13 at p.8, but *Matthews* provides a much broader definition of "likeness", including things such as pictures or drawings. 15 F.3d at 438. *Matthews* only held that the plaintiff's "life story" was not a "name or likeness" that created value to appropriate. *Id.* at 437. This differs from the facts at hand, where Defendants have misappropriated Plaintiff's likeness, not her life story, for the very reason that it has value.

Plaintiff need not prove (and certainly not at the initial pleading stage) that Defendants misappropriated Plaintiff's likeness by using an "actual" image of Plaintiff to promote their products, as Defendants incorrectly assert. Rather, courts have repeatedly recognized that misappropriation may be predicated on a defendant's using "an aspect of that person's persona in a manner that symbolizes or identifies the person, 'such as the use of a name, nickname, voice, picture, performing style, ***distinctive characteristics or other indicia closely associated with a person***.'" *Henley v. Dillard Dep't Stores*, 46 F. Supp.2d 587, 591 (N.D. Tex. 1999) (citing *Elvis Presley Enterprises, Inc. v. Capece*, 950 F.Supp.783, 801 (S.D. Tex. 1996) *rev'd on other grounds*, 141 F.3d 188 (5th Cir. 1998)) (emphasis added). Indeed, "[m]isappropriation most often occurs . . . when the defendant impersonates a person for gain." *Meadows v. Hartford Life Ins. Co.*, 2006 U.S. Dist. LEXIS 55945, at *25 (S.D. Tex. 2006) *aff''d*, 492 F.3d 634. Courts from other circuits have similarly construed efforts to invoke the image of a well-known individual, without using their

---

[3] Defendants' request the Court dismiss Count 5 with respect to Plaintiff Sydney Nicole LLC, *see* Dkt. 13 at p.8, n.5, is moot, as the claim is clearly written as asserted by Plaintiff Sydney Gifford, whose likeness has been misappropriated.

actual image or name, to infringe on the individual's right of publicity. *See, e.g., Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974) (finding use of photo of race car of professional race car driver violated the driver's right);  *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395 (9th Cir. 1992), *cert. denied*, 508 U.S. 951, 113 S. Ct. 2443 (1993) (finding ad depicting a robot wearing a wig, gown, and jewelry and posing next to a Wheel of Fortune set violated Plaintiff Vanna White's right); *Ali v. Playgirl, Inc.*, 447 F. Supp. 723 (S.D.N.Y. 1978) (finding use of drawing of black male sitting on stool in corner of boxing ring captioned "Mystery Man" but also as "The Greatest," violated boxer's right).[4] In *White*, the court left open the question of when an impressionistic resemblance might become a likeness, noting the possibility of a misappropriation of a plaintiff's identity by impersonation. 971 F.2d at 1397.

By using or replicating the distinctive characteristics and other indicia closely related to Gifford, such as the outfits, poses, hairstyles, makeup, tattoo, and manner of speaking of Gifford, Defendants have appropriated Plaintiff Gifford's likeness by passing Sheil off as Gifford on platforms where Gifford is well-known. Plaintiffs have demonstrated this by showing the drastic change in not only Sheil's online presence but very appearance after the parties initially met in person in December 2022, including changing her hair to match Gifford's and obtaining a highly similar flower tattoo on her inner arm after Gifford posted photos showing her new hairstyle and tattoo on the same part of her body. Dkt. at ¶ 14; *id.* at pp.50, 52. One or two shared characteristics alone falls short of misappropriation, but Sheil has sought to mimic a plethora of Gifford's features

---

[4] While each case construed state laws on the right of publicity, the right of publicity in Texas has been limited to deceased individuals. Its related sister cause of action for misappropriation is similar in substance and intent to the publicity rights of action in the referenced cases. For example, in the Ninth Circuit, elements for the common law right of publicity cause of action are: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *White*, 971 F.2d at 1397. The intent of all causes of action, to protect the commercial interests of well-known individuals in their identities, remains the same across the jurisdictions.

that, put together, allow Sheil to pass herself off as Gifford, *especially* in the multitude of photos where the parties' faces are concealed behind their phones. *See, e.g., id.* at pp.38-42, 46.

Significantly, Gifford's likeness has value associated with it. As a content creator and affiliate marketer, her primary livelihood derives from and is predicated on the commercial goodwill associated with her name and likeness. "Protecting one's name or likeness from misappropriation is socially beneficial because it encourages people to develop special skills, which then can be used for commercial advantage. Associating one's goodwill with a product transmits valuable information to consumers. Without the artificial scarcity created by the protection of one's likeness, that likeness would be exploited commercially until the marginal value of its use is zero." *Matthews*, 15 F.3d at 437-38. Plaintiffs have shown that Gifford has over half a million followers across her social media platforms and a number of her posts have reached hundreds of thousands of views. She has established a reputation, especially in the Amazon Influencer Program in which both individual parties participate, based on her distinctive characteristics and traits. The goodwill she has accumulated has increased her credibility and distinction, and the association of her goodwill with the products she transmits is key to her business. This is exactly what the tort of misappropriation aims to protect. Therefore, Plaintiff has set forth facts showing that, by replicating Gifford's distinctive characteristics, Sheil attempts to pass herself off as Gifford for the value associated with Gifford's likeness.

### B.    Gifford can be identified from Defendants' publications.

Second, Plaintiff has set forth facts supporting that Gifford can be identified from the publications. Defendants incorrectly assert that Plaintiff must have alleged that people who saw or heard Sheil speak believed that she was in fact Gifford,  citing *Waits v. Frito-Lay, Inc.*, 978 F.2d

1093, 1101 (9th Cir. 1992) to support their claim. Defendants improperly conflate what must be *pled* with may be *proven*. The court in *Waits* discussed the sufficiency of evidence set forth at a jury trial. No such allegation and mustering of evidence is required at the pleading stage and Defendants' demand that Plaintiff plead and prove her case in an initial pleading is improper. Plaintiff has alleged that Gifford can be identified as the individual whom Defendants' posts appropriate, *see* Dkt. 1 at ¶ 76, particularly in light of the quick succession of posts on Instagram and TikTok's algorithm-driven curated content pages. Thus, Plaintiff has met this element.

**C.    Defendants received a benefit from using Gifford's likeness.**

Third, Gifford has set forth facts plausibly pleading that there was some benefit to Defendants, as, on information and belief, Defendants profited by gaining a larger audience on Defendants' platforms based on their misappropriation and, thereby, received higher commission. Dkt. 1 at ¶ 77. Defendants attempt to paint the picture that Gifford accuses Sheil of merely misappropriating Gifford's "aesthetics" (the term shows up nowhere in Plaintiff's Count 5) while in fact, Gifford has sufficiently claimed that Defendants have appropriated the very likeness of Gifford. Sheil has repeatedly appropriated Gifford's likeness for the value associated with it, namely, the reputation, social and commercial standing, goodwill, and other values Gifford has accrued over the years. Defendants have sought to "cash in" on this goodwill, *see Meadows*, 492 F.3d at 639, by passing Sheil off as Defendant Gifford in her online posts. This appears to have worked for Defendants, whose posts have received significantly higher views since the misappropriation began. *See* Dkt. 1 at ¶ 34. Thus, Plaintiff has set forth facts supporting her claim that Defendants have derived commercial benefit from the use of Plaintiff Gifford's likeness.

As such, it is clear that Plaintiff has sufficiently pled all of the elements for misappropriation of likeness and Defendants' motion to dismiss Count 5 should be denied.

### IV. COUNT 6: Plaintiffs have Adequately Stated Their Claim for Tortious Interference.

Plaintiffs have adequately stated their claim that Defendants have tortiously interfered with Plaintiffs' existing business relations with Amazon.[5] The elements of a cause of action for tortious interference with business relations are (1) the existence of a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage, and (4) actual damage or loss occurred. *Victoria Bank & Tr. Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991). Plaintiffs have pled facts supporting each element in Count 6.

First, Plaintiffs have set forth facts showing their ongoing contract with Amazon, as Gifford is a participant in Amazon's Influencer Program. Dkt. 1 at ¶¶ 81, 83. Eligibility in the program requires participants to enter into an agreement with Amazon. Gifford's credibility with her followers and reliability as a referral source for products are integral parts of the success of her business. Defendants interfered with this contract by copying Plaintiffs' posts, featured products, Amazon Idea Lists, and Amazon Storefront. Second, Plaintiffs have alleged that Defendants' interference was willful and intentional, as Plaintiffs alleged facts showing Defendants' repeated willful copying of Plaintiffs' posts and Amazon Idea Lists. *Id.* at ¶¶ 36, 84, 86.

Third, Plaintiffs have set forth facts showing that such interference was a proximate cause of Plaintiffs' damage. Plaintiffs' success under the Amazon contract is determined by how many

---

[5] Count 6 of the Original Complaint is titled "Tortious Interference with Prospective Business Relations" but should be titled "Tortious Interference with Business Relations." The count contains allegations meeting each element of a cause of action for tortious interference with business relations with respect to Plaintiffs' existing contract with Amazon. Plaintiffs request the Court to construe Count 6 as a claim for "Tortious Interference with Business Relations", as Count 6 contains all requisite elements and there is no undue surprise to Defendants, who discuss in detail Plaintiffs' allegations pertaining to the existing contract with Amazon and who have yet to file an Answer.

of the products Gifford promotes are purchased by viewers of her content. When Defendants post infringing content that diverts existing and prospective followers' engagement with Plaintiffs' content, this necessarily interferes with Plaintiffs' performance under the contract. Similarly, Defendants' promotion of the same products that Plaintiffs promote interferes with the base of Plaintiffs' prospective purchasers. Fourth, Plaintiffs have alleged that actual damage or loss has occurred by showing that Plaintiffs have experienced decreased commission, decreased views, and decreased motivation to perform pursuant to Plaintiffs' contract with Amazon, as a direct result of Defendants' interference. *Id.* at ¶¶ 85, 105. Therefore, Plaintiffs have adequately pled each element of tortious interference with business relations, and Defendants' motion to dismiss Count 6 of Plaintiffs' Original Complaint should be denied.

## V. COUNTS 7 & 8: Plaintiffs have Adequately Stated Their Claims for Unfair Competition and Unjust Enrichment and Neither Claim is Preempted.

Plaintiffs have alleged enough facts to state a claim both for unfair competition (Count 7) and unjust enrichment (Count 8), and neither claim is preempted by federal law with respect to the pleadings and facts at hand. While state law claims may be preempted by the Copyright Act if the claim falls within the general scope of federal copyright law, such claims are not preempted if the state law claim requires one or more qualitatively different elements that fall outside of the scope of copyright law. *Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs.,* 965 F.3d 365, 377 (5th Cir. 2020). Both Plaintiffs' claims for unfair competition (Count 7) and unjust enrichment (Count 8) require one or more qualitatively different elements.

### A.    COUNT 7: Plaintiffs have adequately stated a claim for unfair competition.

With respect to Plaintiffs' unfair competition claim, such claim is not preempted because, in connection with the facts at hand, it fails both prongs of the preemption test. For a claim to be preempted by the Copyright Act, (1) the work in which the right is asserted must come within the subject matter of copyright and (2) the right must be equivalent to any of the exclusive rights within the general scope of copyright. *Id.* at 378. The Copyright Act protects certain kinds of works, be they literary, musical, dramatic, motion picture, architectural, or the like. 17 U.S.C. § 102(a). The Copyright Act does not protect ideas, but rather the expression of ideas. *Computer Mgmt. Assistance Co. v Robert F.DeCastro, Inc.*, 220 F.3d 396, 400 (5th Cir. 2000). Plaintiffs have pled unfair competition specifically with respect to Defendants' copying of *products* from Plaintiffs' social media accounts and Amazon Storefront Ideas Lists. Dkt. 1 at ¶ 88.

The products that are the subject of Plaintiffs' unfair competition claim do not fall within the subject matter of copyright in this case. Plaintiffs make no claim of ownership to or the copyrightability of individual products sold by third parties on Amazon that Plaintiffs may promote or feature on Amazon Idea Lists. Further, the right Plaintiffs seek to protect through their unfair competition claim are not equivalent to those rights Plaintiffs seek to protect in their copyright infringement claims. Here, Plaintiffs seek to protect their rights in the curated products and lists Gifford has created and that Defendants have copied from. Plaintiffs' Amazon Idea Lists are not the subject of Plaintiffs' copyright infringement claims. Indeed, "ideas" on a list or links to products offered for sale by third parties would not fall within the subject matter of copyright. However, this in no way diminishes the significance of Plaintiffs' curated products and Amazon Idea Lists. The lists require significant time and effort for Gifford to create, serve as a reference point to the products that Plaintiffs have featured or will feature in created content, and are foundational to an affiliate's business in the Amazon Influencer Program. Defendants' copying of

the products featured on Plaintiffs' Idea Lists undercuts the value of Plaintiffs' business and has resulted in damages to Plaintiffs, including decreased sales and commission, which Plaintiffs have adequately pled. Dkt. 1 at ¶ 88. Therefore, Defendants' motion to dismiss Count 7 should be denied, as Plaintiffs' claim is not preempted and Plaintiffs have adequately pled such claim.

### B.    COUNT 8: Plaintiffs have adequately stated a claim for unjust enrichment.

Plaintiffs' unjust enrichment claim similarly suffices. The Fifth Circuit has recently held that an unjust enrichment claim is not preempted by copyright law because "it requires establishing that [defendant] engaged in wrongful conduct beyond mere reproduction: namely, the taking of an undue advantage." *Id.* at 379. Here, Plaintiffs have pled that Defendants have engaged in unlawful conduct beyond mere reproduction that amounts to Defendants' taking undue advantage of Plaintiff by interfering with Plaintiff's opportunity to freely participate in the Amazon Influencer Program that both individual parties are participants in. Defendants' actions independently violate the Amazon Associates Program Participation Requirements, which are binding upon both individuals, and which require participants' platforms to contain original content and refrain from violating intellectual property rights.[6] This action constitutes taking an undue advantage of Gifford, a fellow content creator under the Amazon Influencer Program. Plaintiffs have set forth in detail how Defendants have received higher views and, presumably, commission, by this conduct, which constitutes receiving a benefit Plaintiffs would have otherwise obtained from Amazon from promoting products curated by Plaintiffs in a creative and appealing way. Therefore,

---

[6] For further information, *see* Amazon Associates Program Participation Requirements, Amazon, https://affiliate-program.amazon.com/help/operating/policies#Associates%20Program%20Influencer%20Program%20Policy (updated March 1, 2024).

Plaintiffs' unjust enrichment claim is not preempted and Defendants' motion to dismiss Count 8 should be denied.

## CONCLUSION

Defendants improperly expect Plaintiffs to both plead and prove their claims in an initial pleading in each identified cause of action in Defendants' Partial Motion to Dismiss. As supported by the reasons set forth above, Plaintiffs have pled sufficient facts to support each and every one of their claims for Vicarious Copyright Infringement (Count 2), Digital Millennium Copyright Act Violation (Count 3), Misappropriation (Count 5), Tortious Interference with Business Relations (Count 6), Unfair Competition (Count 7), and Unjust Enrichment (Count 8). Therefore, Defendants' Partial Motion to Dismiss should be Denied in full.

Dated: July 22, 2024

Respectfully Submitted,

*/s/ Kirsten Kumar*

Kirsten Kumar
Texas Bar I.D.: 24126104
kkumar@thekumarlawfirm.com
**The Kumar Law Firm PLLC**
2110 Ranch Road 620 S
Ste. 341060
Lakeway, TX 78734
Phone: (512) 960-3808
**Attorneys for Plaintiffs**
**SYDNEY NICOLE LLC AND**
**SYDNEY NICOLE GIFFORD**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Plaintiffs' Response in Opposition to Defendants' Partial Motion to Dismiss Counts 2, 3, 5, 6, 7, & 8 of Plaintiffs' Complaint was filed electronically on July 22, 2024. As such, this document was served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

*/s/ Kirsten Kumar*

_____

Kirsten Kumar

19