Additions UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **SYDNEY NICOLE LLC, and** § <br> **SYDNEY NICOLE GIFFORD,** § <br> *Plaintiffs* § <br> § <br> v. § <br> § <br> **ALYSSA SHEIL LLC, and** § <br> **ALYSSA SHEIL,** § <br> *Defendants* § | No.  1:24-CV-00423-RP |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Before the Court is Defendants Alyssa Sheil LLC and Alyssa Sheil's (together, "Sheil") partial motion to dismiss, Dkt. 13, and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the motion be granted in part and denied in part.

**I.      BACKGROUND**

This lawsuit arises from a feud between social media influencers who both promote Amazon products. Plaintiffs Sydney Nicole LLC and Sydney Nicole Gifford (together "Gifford") claim that Sheil copied Gifford's posts on Instagram, TikTok, Amazon Storefront, and Bio.Site, as well as designs for apparel Gifford created through Amazon. Dkt. 1, at 2-14. Gifford attached to her complaint an exhibit demonstrating over 60 of Gifford's posts next to those of Sheil to demonstrate how Sheil "replicated the neutral, beige, and cream aesthetic of [Gifford's] brand identity."

1

*Id.* at 4; Dkt. 1-1. Based on Sheil's mimicking posts, Gifford sued her for eight causes of action: copyright infringement, vicarious copyright infringement, trade dress infringement, misappropriation of her likeness, tortious interference, unfair trade practices and competition, and unjust enrichment, as well as for violations of the Digital Millennium Copyright Act ("DMCA"). *Id.* at 14-26. Sheil moved to dismiss six of Gifford's eight causes of action, Dkt. 13, and Gifford filed a response. Dkt. 16.

## II.     LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III.   DISCUSSION

Gifford's complaint essentially seeks to hold Sheil liable for copying Gifford's social media posts and curated lists that promote Amazon products. *See* Dkt. 1. Sheil moved to dismiss six of Gifford's claims, arguing generally that Sheil has not broken any laws by making social media posts like Gifford's posts. Dkt. 13. In addressing each of these claims, the undersigned notes that this case appears to be the first of its kind—one in which a social media influencer accuses another influencer of (among

other things) copyright infringement based on the similarities between their posts that promote the same products.

### A.  Count 2: Vicarious Copyright Infringement

"Vicarious copyright infringement occurs when a defendant 'profit[s] from direct infringement while declining to exercise a right to stop or limit it.'" *Dynastudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 777 (S.D. Tex. 2017) (citing *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). A claim for vicarious infringement, then, requires a plaintiff to plead: (1) direct infringement by a third party; (2) the defendant's right and ability to supervise the infringing conduct; and (3) the defendant's direct financial interest in the infringing activity. *Id.* (citing *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007)). "The first prong of supervision requires a specific relationship of control between the vicarious infringer and the direct infringer." *Dunham v. Lei*, No. CV203716DMGMAAX, 2021 WL 4595808, at *8 (C.D. Cal. June 7, 2021) (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007)).

Sheil argues that Gifford failed to allege any act of infringement by a third party—since Gifford accuses both defendants of direct infringement—or that Sheil has any right or ability to control the infringing conduct of third-party viewers and followers of her social media pages. Dkt. 13, at 6-7.[1] Gifford responds that her

---

[1] In her reply, Sheil also challenges whether Gifford properly pleaded that Sheil received any direct financial benefit from the alleged third-party infringement. Dkt. 17, at 7. Because "[a]rguments raised for the first time in a reply brief are generally waived," however, the undersigned need not consider this argument. *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010). In any event, Gifford has sufficiently pleaded Sheil's "direct financial interest in the

other things) copyright infringement based on the similarities between their posts that promote the same products.

### A.  Count 2: Vicarious Copyright Infringement

"Vicarious copyright infringement occurs when a defendant 'profit[s] from direct infringement while declining to exercise a right to stop or limit it.'" *Dynastudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 777 (S.D. Tex. 2017) (citing *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). A claim for vicarious infringement, then, requires a plaintiff to plead: (1) direct infringement by a third party; (2) the defendant's right and ability to supervise the infringing conduct; and (3) the defendant's direct financial interest in the infringing activity. *Id.* (citing *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007)). "The first prong of supervision requires a specific relationship of control between the vicarious infringer and the direct infringer." *Dunham v. Lei*, No. CV203716DMGMAAX, 2021 WL 4595808, at *8 (C.D. Cal. June 7, 2021) (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007)).

Sheil argues that Gifford failed to allege any act of infringement by a third party—since Gifford accuses both defendants of direct infringement—or that Sheil has any right or ability to control the infringing conduct of third-party viewers and followers of her social media pages. Dkt. 13, at 6-7.[1] Gifford responds that her

---

[1] In her reply, Sheil also challenges whether Gifford properly pleaded that Sheil received any direct financial benefit from the alleged third-party infringement. Dkt. 17, at 7. Because "[a]rguments raised for the first time in a reply brief are generally waived," however, the undersigned need not consider this argument. *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010). In any event, Gifford has sufficiently pleaded Sheil's "direct financial interest in the

vicarious-infringement cause of action does not seek to hold either defendant liable for the other's infringement, but rather for infringement by third-party viewers and followers of Sheil's platforms—which she was able to control by deciding what content to post and who could view it. Dkt. 16, at 6-9. Sheil, in contrast, argues that while Gifford alleges that Sheil has control over her own platforms, she failed to plead that Sheil has control over her viewers or followers. Dkt. 17, at 6.

Initially, Gifford's complaint clearly refers to "third part[ies] accessing, downloading, interacting with, and/or viewing the infringing content" which is sufficient to plead infringement by third parties. Dkt. 1, at 17; *IMAPizza, LLC v. At Pizza Ltd.*, 965 F.3d 871, 877 (D.C. Cir. 2020) ("[T]ransmission involves two potentially infringing acts, the unauthorized uploading and the unauthorized downloading of a file, either one of which could create a copy that would constitute a domestic act of infringement[.]"); *cf. Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 499 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007) (dismissing vicarious-liability claim where plaintiff made "no specific allegations regarding what the infringing conduct is, nor does he refer to any specific registered works").

Although it does not appear that any court has addressed whether a social media user has the "right and ability" to supervise their viewers or followers, courts

---

infringing activity" by alleging that each "instance of a third party accessing, downloading, interacting with, and/or viewing the infringing content … directly corresponds to higher sales commission obtained by" Sheil based on "higher views, engagement, and sales of products featured in the infringing content." Dkt. 1, at 17; *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001), *aff'd* 284 F.3d 1091 (9th Cir. 2002) ("Financial benefit exists where the availability of infringing material acts as a 'draw' for customers." (citation omitted)).

have found "'[t]he ability to block infringers' access to a particular environment for any reason whatsoever'" sufficient to establish "'the right and ability to supervise.'" *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009) (quoting *Napster*, 239 F.3d at 1023); *see also Dish Network LLC v. Datacamp Ltd.*, No. 22-cv-00993, 2023 WL 4549528, at *4 (N.D. Ill. July 14, 2023) ("When the defendant can terminate its users' access to the system to prevent infringement, the defendant has the ability to stop infringement."). Here, Gifford alleged that Sheil "exercised the right and ability to supervise what content is posted on the platforms and which users follow the platforms." Dkt. 1, at 17. As in *Arista*, where the defendants had the right to supervise and control third-party infringement by filtering or blocking access to their online bulletin, here Sheil may similarly police the content available on her platforms and who can access those platforms. *Id.*; *Arista*, 633 F. Supp. 2d at 131, 157. Construing the facts in the light most favorable to Gifford, the undersigned concludes that she has sufficiently pleaded Sheil's right and ability to control the alleged third-party infringement by exercising control over the allegedly infringing content on her platforms and the third parties' ability to access that content.

### B.   Count 3: DMCA Violations

To state a claim under the DMCA, a plaintiff must allege "(1) the existence of [Copyright Management Information] in connection with a copyrighted work; and (2) that a defendant 'distribute[d] ... works [or] copies of works'; (3) while 'knowing that [Copyright Management Information] has been removed or altered without

6

authority of the copyright owner or the law'; and (4) while 'knowing, or ... having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, No. SA-21-CV-00673-XR, 2022 WL 1105751, at *2 (W.D. Tex. Apr. 13, 2022) (quoting *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020)).

Gifford alleged that Sheil violated the DMCA by intentionally creating posts "indistinguishable" from Gifford's posts without reference to Gifford's name or username. Dkt. 1, at 19. Sheil asserts that this claim should be dismissed because Gifford does not contend that Sheil reproduced identical images or removed Gifford's Copyright Management Information ("CMI") from Gifford's images. Dkt. 13, at 7-11. Gifford responds that Sheil's posts need not be identical to Gifford's posts to violate the DMCA, insisting that she has adequately pleaded her claim because she alleged that Sheil copied Gifford's posts without including Gifford's username, which is considered CMI under the DMCA. Dkt. 16, at 9-12.

Contrary to Sheil's insistence that she cannot be liable under the DMCA where "there is no copy and paste of identical images with a copyright cropping," courts in this Circuit have found that "the DMCA may properly apply even when the allegedly infringing work is not identical to the original." Dkt. 13, at 7; *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.,* 667 F. Supp. 3d 411, 417 (S.D. Tex. 2023) (citing *Huffman v. Activision Publ'g, Inc.*, No. 219CV00050RWSRSP, 2020 WL 8678493, at *12 (E.D. Tex. Dec. 14, 2020), *report and recommendation adopted*, 2021 WL 2141352 (E.D. Tex. May 26, 2021)). There, the court denied a motion to dismiss plaintiff's DMCA

claims based on defendant's use of copyrighted training material to create a new presentation that, while changing the colors of graphs and sizes of charts, nonetheless incorporated the same copyrighted material. *Id.* at 418-20, 429 ("[T]he fact that Plaintiff pleaded CMI removal, alteration, and/or falsification from copies is sufficient under § 1202." (citations omitted)).

Here, Gifford similarly alleges that while Sheil may have tweaked her social media posts, she still used Gifford's copyrighted material in her allegedly infringing posts without including Gifford's name and/or username—which courts have interpreted to constitute CMI. Dkt. 1, at 18-20; *Batra v. PopSugar, Inc.*, No. 18-CV-03752-HSG, 2019 WL 482492, at *2 (N.D. Cal. Feb. 7, 2019) (denying motion to dismiss DMCA claim where "[t]he Instagram sidebar is alleged to include identifying information about Plaintiff that plausibly constitutes CMI under section 1202(c)"). Given that Gifford may properly allege a DMCA claim based on Sheil's use of "copies" of her work and CMI has been interpreted to include username information in social media posts, the undersigned finds that Gifford sufficiently stated a claim under the DMCA.

### C.  Count 5: Misappropriation of Likeness

To state a claim for misappropriation of likeness under Texas law, a plaintiff must allege: (1) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) that the plaintiff can be identified from the publication; and (3) that there

was some advantage or benefit to the defendant. *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994).

Gifford[2] alleged that Sheil misappropriated her likeness by imitating Gifford's "outfits, poses, hairstyles, makeup, and voice" in such a way that Gifford's social media followers and others familiar with Gifford can "identify her as the individual whom [Sheil's] posts appropriate," and that such misappropriation has resulted in increased compensation for Sheil through commissions. Dkt. 1, at 22-23. Sheil attacks Gifford's misappropriation claim for failing to adequately allege that Sheil "used the plaintiff's ***actual*** image, name, or voice," that Gifford can be identified in Sheil's posts, or that Sheil benefited from using Gifford's name or likeness. Dkt. 13, at 11-16. Gifford counters that it is sufficient to allege that Sheil "sought to mimic a plethora of Gifford's features" to "pass herself off as Gifford" such that "Gifford can be identified as the individual whom [Sheil's] posts appropriate." Dkt. 16, at 13-18.[3]

---

[2] The parties agree that this claim cannot be brought by Plaintiff Sydney Nicole LLC as a corporation, so this claim is brought by Gifford in her personal capacity. Dkts. 16, at 14; 17, at 9; *Doggett v. Travis Law Firm, P.C.*, 555 S.W.3d 127, 130, 132 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (holding that a corporation "cannot recover for invasion of privacy by appropriation of name or likeness").

[3] Sheil also argues in her reply that Gifford cannot maintain a claim for misappropriation of likeness where Gifford put her image into the public domain. Dkt. 17, at 10-11 (citing *Matthews*, 15 F.3d at 437 and *Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 777 (N.D. Tex. 2007)). While this argument was raised for the first time in Sheil's reply brief, the undersigned nonetheless finds it insufficient to defeat Gifford's claim at this time given that neither of the cases Sheil cites involved allegations that the defendant impersonated plaintiff—which necessarily involves the use of information (i.e., the plaintiff's likeness) that is in the public domain. *Matthews*, 15 F.3d at 440 (dismissing misappropriation claim where defendant used aspects of plaintiff's life story in novel); *Busch*, 477 F. Supp. 2d at 777 (dismissing misappropriation claim where defendants created a satirical skit using an image of plaintiff from a television clip); *see also Jones*, 600 F.3d at 541.

Initially, Gifford has satisfied the first element by alleging that Sheil imitated Gifford to create a "virtually indistinguishable replica" of Gifford's likeness. Dkt. 1, at 22; *Henley v. Dillard Dep't Stores*, 46 F. Supp. 2d 587, 591 (N.D. Tex. 1999) (stating that misappropriation claim may be based on defendant's use of "an aspect of that person's persona in a manner that symbolizes or identifies the person"); *Meadows v. Hartford Life Ins.*, No. CIV.A. H-05-2209, 2006 WL 2336913, at *7 (S.D. Tex. Aug. 10, 2006), *aff'd*, 492 F.3d 634 (5th Cir. 2007) ("Misappropriation most often occurs when a person's name or likeness is used to advertise the defendant's product or when the defendant impersonates a person for gain."). Gifford also adequately pleaded that she may be identified in Sheil's posts—Sheil's insistence to the contrary raises a factual question that is unsuited for resolution at the motion to dismiss phase. Dkts. 1, at 22; 13, at 14-15; *Angelina Emergency Med. Assocs. PA v. Health Care Serv. Corp.*, 506 F. Supp. 3d 425, 431 (N.D. Tex. 2020) ("[T]he primary purpose of this motion to dismiss is not to rule on factual matters that require further discovery, but to determine which legal claims—if any—can be dismissed as a matter of law.").

Finally, Gifford has sufficiently alleged that Sheil gained a benefit through "monetary compensation" for increased performance attributable to the misappropriation. Dkt. 1, at 22-23. Sheil asks the Court find that she did not receive any benefit from use of Gifford's likeness because Gifford's likeness has no "intrinsic or unique value." Dkt. 13, at 16-17 (citing *Henley*, 46 F. Supp. 2d at 596). While a defendant cannot receive a commercial benefit from the use of someone's likeness that has no value, the court in *Henley* nonetheless noted that "[i]f a defendant

10

appropriates a plaintiff's name or likeness for his own commercial advantage, he necessarily derives a benefit from its use." *Henley*, 46 F. Supp. 2d at 596. Here, Gifford has alleged that her likeness has value and that Sheil used it for commercial gain—allegations sufficient to satisfy the third element of Gifford's claim. Construing the facts in Gifford's favor, the undersigned finds that she has stated a claim for misappropriation of likeness.

### D.     Count 6: Tortious Interference

To state a claim for tortious interference with existing contractual relations[4] under Texas law, the plaintiff must plead: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) that the act was the proximate cause of the plaintiff's damage; and (4) that actual damage or loss occurred. *Ancor Holdings, L.P. v. Landon Cap. Partners, LLC*, 114 F.4th 382, 398 (5th Cir. 2024) (citing *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017)). The "willful and intentional act of interference" element generally demands a showing that "the defendant was more than a willing participant—the defendant must have knowingly induced one of the contracting parties to breach its obligations under [the] contract." *Greenville Automatic Gas Co. v. Automatic Propane Gas &*

---

[4] Gifford claims that although she pleaded a claim for tortious interference with prospective business relations, Dkt. 1, at 23, she in fact meant to plead a claim for tortious interference with an existing contract. Dkt. 16, at 18 n.5. The undersigned thus construes Gifford's claim as for tortious interference with an existing contract. *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021) ("So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it 'fails to categorize correctly the legal theory giving rise to the claim.'" (quoting *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013))).

*Supply, LLC*, 465 S.W.3d 778, 786-87 (Tex. App.—Dallas 2015, no pet.); *Reg'l Specialty Clinic, P.A. v. S.A. Randle & Assocs., P.C.*, 625 S.W.3d 895, 902 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

Gifford, who receives commissions when her followers purchase the Amazon products she promotes, alleged that Sheil interfered with Gifford's contract with Amazon "by engaging in the appropriation and infringement of" Gifford's intellectual property and likeness such that Gifford's sales commissions were negatively impacted. Dkt. 1, at 23-24. Sheil insists that this claim should be dismissed because Gifford did not allege that Sheil interfered with Gifford's contract with Amazon or that Sheil had any intent to interfere with that agreement. Dkts. 13, at 16-20; 17, at 12. Gifford responds that Sheil interfered with Gifford's existing business relationship with Amazon by "copying [Gifford's] posts, featured products, Amazon Idea Lists, and Amazon Storefront." Dkt. 16, at 18. In reply, Sheil insists that because neither Gifford nor Amazon breached their contract with each other, Gifford cannot state a claim for tortious interference. Dkt. 17, at 11-12.

As the Fifth Circuit has noted, the "'act of interference'" element requires demonstration that the defendant "'knowingly induced one of the contracting parties to breach its obligations under a contract.'" *Nix v. Major League Baseball*, 62 F.4th 920, 934-35 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 165 (2023) (quoting *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (affirming dismissal of claim for tortious interference with contractual relations where plaintiff "[did] not allege any breach by himself or [the other party to the

12

contract].")). Some Texas courts have described this element as more broadly encompassing "any act which retards, makes more difficult, or prevents performance," though "the defendant's intent must [still] be to effect a breach of the contract." *Moore v. Bushman*, 559 S.W.3d 645, 651 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Fluor Enterprises, Inc. v. Conex Int'l Corp.*, 273 S.W.3d 426, 443 (Tex. App.—Beaumont 2008, pet. denied) (citation omitted).

While Gifford alleged that Sheil copied her "with knowledge" that her actions would interfere with Gifford's relationship with Amazon by causing Gifford to lose sales commissions, Gifford does not anywhere allege that Sheil's actions caused any breach to her contract with Amazon or that Sheil intended to cause such a breach. Dkt. 1, at 24. Even accepting as true that Sheil acted with intent to interfere with Gifford's contract with Amazon by causing Gifford to lose sales commissions and followers, such allegations nonetheless fall short of demonstrating Sheil's intent to cause a *breach* of Gifford's contract with Amazon. *Nix*, 62 F.4th at 935; *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. 2010) (finding plaintiff failed to state claim for tortious interference with contract where plaintiff failed to "set forth facts that allege any kind of interference or persuasion of a party to breach any existing contracts"). The undersigned finds that Gifford failed to state a claim for tortious interference with existing contractual relations against Sheil.

### E.   Count 7: Unfair Competition

"Unfair competition under Texas law is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to

honest practice in industrial or commercial matters." *Taylor Pubs. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (citations omitted). To state a claim for unfair competition under Texas law, the plaintiff must plead that: (1) the defendant committed a recognized tort or illegal act; and (2) the wrongful conduct interfered with the plaintiff's ability to conduct its business. *Id.* ("Without some finding of an independent substantive tort or other illegal conduct, we hold that liability cannot be premised on the tort of 'unfair competition.'").

Gifford pleaded her claim for unfair competition in the alternative, alleging that Sheil engaged in unfair competition by "copying products" from Gifford's social media accounts and "publishing and promoting infringing works that feature those same products in nearly identical styling as featured in Plaintiffs' works." Dkt. 1, at 25. Sheil moves to dismiss this claim as preempted by federal copyright law. Dkt. 13, at 20-22. Gifford responds that her unfair-competition claim is not preempted by federal law because she seeks to protect her "rights in the curated products and lists Gifford has created and that [Sheil] ha[s] copied from," not Sheil's use of copyrighted material. Dkt. 16, at 20. Sheil counters that Gifford alleged that her product lists are the subject of her copyright claim, and even pleaded this claim in the alternative—indicating that this claim is based on the same conduct as her copyright claim. Dkt. 17, at 12-13.

"Section 301 of the Copyright Act preempts state law claims that fall within the general scope of federal copyright law." 17 U.S.C. § 301(a); *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 655 (5th Cir. 2017). Courts use a two-part test

14

to determine whether the Federal Copyright Act ("FCA") preempts a state-law claim, asking: (1) "whether the claim as alleged falls 'within the subject matter of copyright' as defined by 17 U.S.C. § 102" and, if so, (2) whether the state claim "protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as defined in 17 U.S.C. § 106." *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 594 (5th Cir. 2015). "We evaluate the equivalency of the protected rights by applying the 'extra element' test: Preemption does not occur if the state law claim requires 'one or more qualitatively different elements.'" *Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*, 965 F.3d 365, 378 (5th Cir. 2020) (quoting *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999)).

First, Gifford's unfair-competition claim falls within the same subject matter as the FCA because this claim is explicitly premised on Sheil's "publishing and promoting infringing works," and even her product lists—though not copyrightable—are akin to "compilations of facts" or "pictorial [or] graphic" that are within the subject matter of copyright. Dkt. 1, at 25[5]; 17 U.S.C. § 102(a); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 359 (1991) (holding "it is beyond dispute that compilations of facts are within the subject matter of copyright" even though "copyright protects only the author's original contributions—not the facts or information conveyed"); *Digital Drilling*, 965 F.3d at 378 ("[W]e have recognized that 'the Copyright Act preempts more than it protects' and 'can preempt a state law claim

---

[5] Gifford also argues that her unfair-competition claim arises from Sheil's "copying of *products*" from Gifford's social media and Amazon Storefront—yet fails to explain how Sheil's promotion of the same products would constitute an "independent tort," as necessary to state a claim for unfair competition under Texas law. Dkt. 16, sat 20; *Taylor*, 216 F.3d at 486.

15

even if the intellectual property lands in one of § 102(b)'s exclusions.'" (quoting *Spear*, 791 F.3d at 596)).

Second, Gifford's unfair competition claim is preempted by the FCA because it does not include "'any element that renders different in kind [plaintiff's] rights under state and federal law.'" Dkt. 1, at 25; *Digital Drilling*, 965 F.3d at 378 (quoting *Alcatel*, 166 F.3d at 789). Moreover, the Fifth Circuit has repeatedly stressed that under Texas law an unfair-competition claim based on misappropriation, like the one here, "does not afford protection qualitatively different from federal copyright law." *Motion Med. Techs., LLC. v. Thermotek, Inc.*, 875 F.3d 765, 775 (5th Cir. 2017); *Alcatel*, 166 F.3d at 789 (finding unfair-competition claim preempted where "acts that form the basis" of the "claim touch on interests clearly protected by the Copyright Act"). The undersigned thus finds that Gifford's unfair-competition claim is preempted by federal law and should be dismissed.

### F. Count 8: Unjust Enrichment

Under Texas law, unjust enrichment is "an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits." *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet denied). Unjust enrichment occurs when the defendant has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Id.*; *see also Terra Nova Scis., LLC v. JOA Oil & Gas Houston, LLC*, 738 F. Supp. 2d 689, 697 (S.D. Tex. 2010) ("A party may recover under an unjust enrichment theory when one person has obtained a benefit from another

16

through fraud, duress, or the taking of an undue advantage." (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992))).

Gifford alleged that Sheil received the benefits of higher views and commissions on posts that copied Gifford's social media and Amazon storefront posts and product listings, and that as a result Gifford was harmed by receiving fewer followers and commissions. Dkt. 1, at 25. Sheil once again insists that Gifford's unjust-enrichment claim is preempted by federal law, and in any event, this claim should be dismissed because Gifford has not alleged that Sheil received any benefit from Gifford by fraud, duress, or undue advantage, as required to state a claim for relief under Texas law. Dkt. 13, at 20-23. Gifford responds that her unjust-enrichment claim is not preempted and that Sheil benefited from increased views and "presumably" commissions by copying Gifford's content in violation of Sheil's agreements with Amazon. Dkt. 16, at 21. In reply, Sheil points out that Gifford did not allege any violation of Sheil's agreements with Amazon. Dkt. 17, at 13.

Gifford does not dispute that her unjust-enrichment claim—based on Sheil's copying of Gifford's posts and product lists—falls "within the same subject matter of copyright." Dkts. 13, at 21; 16, at 21. Instead, she argues that her unjust-enrichment claim is not preempted by the FCA because it requires the "extra element" of a showing that the defendant "engaged in wrongful conduct beyond mere reproduction: namely, the taking of an undue advantage." Dkt. 16, at 21 (citing *Digital Drilling*, 965 F.3d at 379). In *Digital Drilling*, the Fifth Circuit encouraged district courts to focus on the "the nature of the unjust enrichment claim actually alleged" to determine

17

whether it "incorporates an element beyond mere unauthorized copying," and as such is not preempted. *Id.* at 381-82; *see id.* at 380 (noting that "Texas law actually recognizes two theories or species of unjust enrichment: one for passive receipt of a benefit that would be unconscionable to retain, and another for wrongfully securing a benefit").

Although Gifford insists in her response that her unjust-enrichment claim arises from Sheil's interference with Gifford's ability to freely participate in the Amazon Influencer Program and Sheil's breach of her agreements with Amazon as part of that program—rather than just Sheil's conduct in copying content—Gifford did not include these factual allegations anywhere in her complaint. *See* Dkts. 1; 16, at 21. Gifford's unjust-enrichment claim is thus preempted by the FCA since she did not allege any independently wrongful conduct by Sheil apart from her copying of Gifford's "social media and Amazon Storefront posts and product listings."[6] Dkt. 1, at 25-26. The claim should be dismissed.

## IV.     RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT IN PART** and **DENY IN PART** Sheil's partial motion to dismiss, Dkt. 13. Specifically, the undersigned recommends

---

[6] Gifford does not argue that her unjust enrichment claim was brought under a theory of "passive receipt of a benefit"—which would also render this claim preempted since it would likewise fail the "extra element" test. Dkt. 16, at 21-22; *Digital Drilling*, 965 F.3d at 380 ("[W]hatever species of unjust enrichment claims might theoretically be available in Texas, the proper object of our extra element test is the unjust enrichment claim actually alleged.").

that the District Judge dismiss with prejudice[7] Gifford's tortious interference, unfair competition, and unjust enrichment claims.

The referral to the Magistrate Judge should now be canceled.

## V.     WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED November 15, 2024.

---

[7] Gifford did not seek leave to amend her complaint. *See* Dkt. 16; *Langan v. Abbott*, 518 F. Supp. 3d 948, 955 (W.D. Tex. 2021) (Pitman, J.) ("When a plaintiff fails to request leave to amend or indicate what might be added to the complaint if amendment were allowed, a district court may dismiss the cause of action with prejudice." (citing *Joseph v. Bach & Wasserman*, LLC, 487 F. App'x 173, 178 (5th Cir. 2012))).

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE