**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| SYDNEY NICOLE LLC AND SYDNEY NICOLE GIFFORD, | § § § § | |
| *Plaintiffs,* | § § | Case No.: 1:24-cv-00423-RP |
| v. | § § § | Jury Trial Demanded |
| ALYSSA SHEIL LLC AND ALYSSA SHEIL, | § § § | |
| *Defendants.* | | |

**DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE PURSUANT TO 28 U.S.C. §636(b)(1)(C)**

Defendants object to two findings of the Report and Recommendation of the United States Magistrate Judge filed on November 15, 2024 (the "Report"), specifically to the Report's analysis of Count 3 (DMCA Violations) and Count 5 (Misappropriation of Likeness). As to the DMCA claim, the Report does not account for Gifford's pleading that affirmatively negates the required element of removal or alteration of copyright management information. Because her pleading demonstrates this did not occur, it fails to state a claim under Section 1202(b) of the DMCA. Turning to misappropriation of likeness claim, while the Report identifies allegations Gifford made of "distinct" characteristics that are uniquely associated with her (as to other women or influencers), it fails to address the plausibility of those allegations—including whether Gifford pled any facts supporting those threadbare recitals of distinctiveness (she did not). Indeed, Gifford does not even identify which particular characteristic is, in fact, distinct. For these reasons, Sheil objects to the Report and the Court should not adopt the Report as to Counts 3 and 5,[1] which should be dismissed with prejudice.

I.   **Count 3 (DMCA Violations): Gifford cannot maintain a DMCA claim because she has pleaded herself out of any plausible conclusion that any CMI was removed from her images.**

Sheil objects, specifically, to the Report for its failure to properly analyze the requirement that copyright management information ("CMI") be removed or altered under Section 1202(b) of the Digital Millenium Copyright Act ("DMCA").[2] Gifford has alleged the following violations of the DMCA under Section 1202(b):

---

[1] While Sheil does not agree with the conclusions reached as to the other counts in the Report, Sheil does not raise specific objections to the analysis of those counts at this time.

[2] The Report also analyzes whether there is a requirement for a work to be an identical copy image or whether the DMCA can apply when an infringing work is not identical. For the purposes of this objection, Sheil does not challenge the Court's analysis on that issue. But even where works are not identical, removal or alteration of CMI is a required element of a DMCA claim, as discussed herein.

1

> 59. Section § 1202(b) of Title 17 further prohibits any person who, without the authority of the copyright holder, (1) intentionally removes CMI, (2) distributes products knowing that CMI has been removed or (3) distributes copies of works knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under the Copyright Act.
>
> 60. Defendants violated § 1202 of Title 17 when they intentionally created indistinguishable posts from Plaintiffs' posts that were published under Plaintiffs' usernames and published and distributed unauthorized posts copying Plaintiffs' work under the names "Alyssa Sheil", "@alyssasheil" or "@alyssasheill" without any reference to Plaintiffs. Example of such posts are set forth in **Exhibit A**.

Dkt. 1 ¶ 59–60. In other words, Gifford's Complaint alleges Sheil violated the DMCA when Sheil "intentionally created indistinguishable posts from Plaintiffs' posts," published those posters under Sheil's usernames and accounts, and failed to make "any reference" to Gifford. Accepting these allegations as true, Courts have routinely held that this alleged conduct—the creation of new works based on copyrighted works—fails to state a claim under the DMCA.

The conclusions in the Report rest on the allegation that, when Sheil created the posts Gifford claims were improperly copied, Sheil made the posts "without reference to Gifford's name or username" (Dkt. 27 at 7) and that Sheil did so "without including Gifford's name and/or username—which courts have interpreted to constitute CMI." Dkt. 27 at 8. But Sheil's request for dismissal is not dependent on whether usernames can be CMI; that conclusion, for these purposes, has no impact on Sheil's challenge to the sufficiency of Gifford's pleading.

Rather, Gifford's pleadings conclusively establish that Sheil never removed any CMI (usernames, account names, or otherwise) from anything. Section 1202 "does not cover the mere failure to add truthful CMI to a copy." *Huffman v. Activision Publishing, Inc.*, 2020 8678493, at *

2

(E.D. Tex. Dec. 14, 2020), *report and recommendation adopted*, 2021 WL 2141352, at *11 (E.D. Tex. May 26, 2021). "Rather, this section requires actual alteration or removal of CMI already found on an image." *Id.* Gifford has made no such allegation; in fact, her pleadings disclaim this possibility. Court's have consistently held that the failure to add CMI is not alteration or removal of CMI. *See Frost-Tsuji*, 2014 WL 5798282, at *7 ("To the extent Frost-Tsuji is arguing that Kadowaki … left out Frost-Tsuji's copyright management information in the process, no actional removal of copyright management information is involved, as basing a drawing on another's work is not the same as removing copyright management information."). The distinction under the DMCA between a mere failure to add, as opposed to alteration or removal, is an important one that this Court should not ignore.

The law is clear: a Section 1202(b) claim requires alteration or removal of CMI. *See* 17 U.S.C. § 1202(b)(1)–(3). Courts in this District have explicitly recognized this requirement. *See Kipp Flores Architects, LLC v. AMH Creekside Development, LLC*, No. 21-cv-1158, 2022 WL 4352480, at *4 (W.D. Tex. Sept. 16, 2022) ("To establish liability under the DMCA, CMI must have been 'removed' from the copyright owner's work."). "Merriam-Webster's Dictionary defines 'remove' as 'taking away or off,' or 'to get rid of' something." *Id.*; *see also Kipp Flores Architects, LLC v. Pradera SFR, LLC*, No. 21-cv-673, 2022 WL 1105751, at *3 (W.D. Tex. Apr. 13, 2022) (same). So, for Gifford to prevail on her DMCA claim, she must allege that "CMI was once present on here work and later taken away." *Id.*

Gifford's allegations, however, are that Sheil "intentionally created indistinguishable posts" (Dkt. 1 at 59), "not that [Sheil] reproduced the copyrighted works and cropped or deleted [Gifford's] CMI." *Kipp Flores v. AMH*, 2022 WL 4352480, at *4. "CMI cannot be 'removed' from a separate work"—*i.e.*, one that Sheil "intentionally created"—because those new, separate works

3

"never included CMI to begin with." *Id.* To put it another way, Sheil cannot possibly have removed Gifford's CMI from Sheil's posts, because the posts that Sheil created, even if they were based on, copied from, or derived from Gifford's works (which Sheil disputes), never contained Gifford's CMI in the first place. That is fatal to a DMCA claim under Section 1202(b).

Courts in other districts have reached similar conclusions. "An action for removal of copyright management information requires the information to be removed from a plaintiff's product or original work." *Faulkner Press, L.L.C. V. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010). Citing *Faulkner*, the Northern District of Illinois dismissed a DMCA claim with prejudice where the plaintiffs contended, like Gifford does, that the defendant "copied aspects of [plaintiff's] original works, with [the defendant's] plans appearing 'virtually identical' to those of Plaintiffs." *Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17-cv-7432, 2019 WL 527535, at *5 (N.D. Ill. Feb. 11, 2019). The bottom line is this: the allegation that one social media post is based on another "is not the same as 'removing' copyright information from a copyrighted work." *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-cv-496, 2014 WL 5798282, at *6 (D. Haw. Nov. 7, 2014). "Reliance in another's work is insufficient to support a claim of removal of copyright management information." *Id.*

Accordingly, Gifford's DMCA claim should be dismissed with prejudice.[3]

## II. Count 5 (Misappropriation of Likeness): Plaintiff has not *plausibly* alleged the existence of or misappropriation of "distinctive characteristics" that are "closely associated" with Gifford.

The Report correctly identifies *Henly* as instructive on what appropriation of "likeness" is. Report at 10 (citing *Henley v. Dillard Dep't Stores*, 46 F. Supp. 2d 587, 590 (N.D. Tex. 1999) for

---

[3] Upon dismissal of Gifford's DMCA claim, Sheil intends to file a motion seeking attorneys' fees under 17 U.S.C. § 1203(b)(5). In fact, that is part of why Sheil seeks early dismissal, so that unnecessary fees do not accrue, increasing Gifford's potential liability under Section 1203(b)(5). Early dismissal is not only legally correct, but the most cost-efficient result for both sides.

the proposition that misappropriation can be based on "an aspect of that person's persona in a manner that symbolizes or identifies the person"). *Henly* provides that a claim must be based on the misappropriation of "distinctive characteristics or other indicia closely associated with a person" that cause the identification of a singular plaintiff. *Henly* at 591 (quoting *Elvis Presley Enterprises, Inc. v. Capece*, 950 F. Supp. 783, 790 (S.D. Tex. 1996), *rev'd on other grounds*, 141 F.3d 188 (5th Cir. 1998) (Citing J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 28.01 [4] (3d ed. 1992))).

Against that backdrop, to satisfy federal pleading standards, Gifford's complaint must plausibly allege the existence of distinctive characteristics that are uniquely associated with her, and plausible facts supporting such a conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Merely making bald assertions that characteristic are distinct, without more, is not sufficient. *Id.* Gifford's Complaint, while it contains allegations, omits any supporting facts that would make distinctiveness plausible and the Report did not properly examine the plausibility of the conclusory and nonspecific allegations in Gifford's Complaint.

For example, the Report identifies that the Complaint alleges misappropriation of "outfits, poses, hairstyles, makeup, and voice." Report at 9. (Citing the Dkt. 1 at 22–23). But aside from these rote recitations that Gifford has these unique or distinctive elements, the Complaint is devoid of any alleged facts supporting those threadbare allegations; there is no supporting allegation to nudge the claim of distinctiveness across the line from conceivable to the realm of plausible. *Twombly*, 550 U.S. 544, 570 (2007). Mere "conclusory statements" or "[t]hreadbare recitations of the elements of a cause of action" do not suffice to support a claim. *Iqbal*, 556 U.S. at 678.

Specifically, Gifford makes no allegation the Court could rely on to plausibly support the allegation that any of Gifford's "outfits, poses, hairstyles, makeup, and voice" are, in fact,

5

distinctive. A comparison to other, well-known examples is illustrative. Well-noted sources have explained how "the aviator sun glasses, spangled band jacket and single glove" could be distinctly associated with Michael Jackson. J. Thomas McCarthy, *Protection of Names and Likeness as Rights of Publicity or Trademarks: a Comparison*, 8 NO. 6 Ent. L. Rep. 3, 5 ENTERTAINMENT L. REPORTER (November 1986). If Michael Jackson were to bring a claim for misappropriation of that likeness, he could *plausibly* allege the particulars (sunglasses, jacket, single glove, etc.) that are distinctly associated with his likeness; he could identify, with at least some level of precision, what is uniquely associated with his persona. Gifford should have to do the same. Indeed, the cases Gifford relied on in her briefing illustrate how a plaintiff in a misappropriation of likeness claim should be able to do precisely what Gifford could not. *See* Dkt. 16 at 10–11.

In *Motschenbacher*, Lothar Motschenbacher was able to explain exactly how his consistent use of certain features made his cars "distinctive" compared to all other cars:

> Since 1966, each of his cars has displayed a distinctive narrow white pinstripe **appearing on no other car**. This decoration has adorned the leading edges of the cars' bodies, which have uniformly been solid red. In addition, the white background for his racing number '11' has always been oval, **in contrast to. . .all other cars.**

*Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 822 (9th Cir. 1974) (emphasis added). Had he taken Gifford's approach, all he would have pleaded is that his car has distinct decorative characteristics—with no explanation. But that is insufficient to state a claim.

In *White*, Vanna White was able to articulate precisely the aspects that distinctly identified her compared to all other women (even all other women who turned letters).

> The female-shaped robot is wearing a long gown, blond wig, and large jewelry. Vanna White dresses exactly like this at times, but so do many other women. The robot is in the process of turning a block letter on a game-board. Vanna White dresses like this while turning letters on a game-board but perhaps similarly attired Scrabble-playing women do this as well. The robot is standing on what looks to be the Wheel of Fortune game show set. Vanna White dresses like

> this, turns letters, and does this on the Wheel of Fortune game show. **She is the only one**.

White v. Samsung Elecs. Am., Inc., 971 F.2d 1395, 1399 (9th Cir. 1992), as amended (Aug. 19, 1992) (emphasis added). The key, distinguishing trait, was the combination of these elements on the Wheel of Fortune game show set—that was uniquely associated with Vanna White. Gifford does not identify what about her hairstyle, poses, voice, or makeup are unique when put in the context of Amazon, Instagram, TikTok, or any other social media. Without this, she has not sufficiently pleaded a claim.

In stark contrast to the specific and supportable examples Gifford identified from the caselaw, Gifford vaguely asserts that nearly *everything* about her is unique, special, and distinctive without offering any specifics. Her Complaint does not identify her version of the Micheal Jackson glove, sunglasses, and jacket compared to all other outfits. Nor the specific Motschenbacher car paint and décor compared to other cars. Nor the particular placement of otherwise common style choices within a specific context, as with Vanna White. Instead, Gifford's Complaint asks the Court to accept her threadbare assertions without any supportive factual allegations as to what makes any of her "outfits, poses, hairstyles, makeup, and voice" supposedly distinctive among all other influencers on Amazon, Instagram, TikTok, or elsewhere. Missing are any allegations that plausibly support the uniqueness of these supposed qualities, or that any outside observer or social media user has looked at any of those qualities and distinctly associated it with Gifford.

Simply put, the Complaint offers no specifics to explain or identify what Gifford claims is "distinctive" or "closely associated with" her. *Elvis*, at 801. Her inability to articulate any specifics makes her bare recitations of distinctness implausible under the federal pleading standard as set forth in *Iqbal* and *Twombley*. Accordingly, the Court should dismiss this claim with prejudice.

## CONCLUSION

For the reasons set forth herein, this Court should not adopt the Report as to Counts 3 and 5. Both counts should be dismissed with prejudice.

Dated: November 29, 2024

Respectfully submitted,

 */s/ Jason McManis*
Jason S. McManis
State Bar No.: 24088032
Shahmeer Halepota
State Bar No.: 24109968
Sujeeth Rajavolu
State Bar No.: 24127961
Thomas Frashier
State Bar No.: 24126185
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
jmcmanis@azalaw.com
shalepota@azalaw.com
srajavolu@azalaw.com
tfrashier@azalaw.com

*Attorneys for the Defendants*
**ALYSSA SHEIL, LLC AND ALYSSA SHEIL**

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of November 2024 a true and correct copy of the above and foregoing document was served on the following counsel of record via the ECF system:

 */s/ Jason McManis*
Jason S. McManis