**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**FILED**

December 11, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ pg

DEPUTY

| | | |
|---|---|---|
| **SYDNEY NICOLE LLC** | § | |
| **AND SYDNEY NICOLE** | § | |
| **GIFFORD,** | § | |
| | § | |
| *Plaintiffs,* | § | **CIVIL ACTION NO.:** |
| | § | |
| v. | § | **1:24-CV-00423RP** |
| | § | |
| **ALYSSA SHEIL LLC AND** | § | |
| **ALYSSA SHEIL,** | § | **JURY** |
| | § | |
| *Defendants.* | § | |
| | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs Sydney Nicole Gifford and Sydney Nicole LLC file this Plaintiffs' First Amended Complaint against Defendants Alyssa Sheil and Alyssa Sheil LLC. Based on actual knowledge with respect to Plaintiffs and Plaintiffs' own acts, and on information and belief as to all other persons and matters, Plaintiffs hereby allege as follows:

### PARTIES

1.     Plaintiff Sydney Nicole LLC is a limited liability company organized under the laws of the state of Texas.

2.     Plaintiff Sydney Nicole Gifford ("Sydney") is a U.S. citizen and an individual resident of Austin, Travis County, Texas.

3.     Defendant Alyssa Sheil LLC is a limited liability company organized under the laws of the state of Texas. Defendant Alyssa Sheil LLC may be served through its registered agent at its registered office, 1001 Beth Page Drive Hutto, Williamson County, Texas 78634.

4.     Defendant Alyssa Sheil ("Alyssa") is an individual resident of Williamson County, Texas. Alyssa may be served with citation at her domicile, 1001 Beth Page Drive, Hutto, Williamson County, Texas 78634, or wherever she may be found.

## JURISDICTION & VENUE

5.     This Court has jurisdiction over the lawsuit under 28 U.S.C. § 1338 because this is an action for, *inter alia*, copyright infringement and violation of the Digital Millennium Copyright Act under Title 17 of the United States Code. This Court has jurisdiction over Plaintiffs' state and common law claims under 28 U.S.C. § 1367 because all claims asserted herein form part of the same case or controversy.

6.     This Court has personal jurisdiction over Defendants because Defendant Alyssa Sheil is a resident of Williamson County, Texas and Defendant Alyssa Sheil LLC is an entity organized under the laws of the state of Texas having a principal place of business in Williamson County, Texas. Venue is proper under 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

7.     Plaintiff Sydney Nicole Gifford is an influencer who has attracted over half a million followers across various online and social media platforms, including Amazon Storefront and bio.site under the username "Sydney Nicole", and Instagram and TikTok under the username @sydneynicolegiff (collectively, "Plaintiffs' Platforms"). Plaintiff Sydney Nicole LLC is the vehicle through which Sydney conducts her business.

8.     Defendant Alyssa Sheil is also an influencer who manages various online and social media accounts, including Amazon Storefront and bio.site under the username "Alyssa Sheil", Instagram under the username @alyssasheill, and TikTok under the username "@alyssasheil"

(collectively, "Defendants' Platforms"). Defendant Alyssa Sheil LLC is the vehicle through which Alyssa Sheil conducts her business.

9.      The burgeoning influencer industry allows content creators such as Sydney to foster their own unique brand identity and curate, promote, or recommend goods and services to others. Promoting and curating thoughtful lists of goods and services is the center of many influencers' business. The success of an influencer's business largely depends on their ability to differentiate themselves from other influencers through (i) cultivating a unique brand identity, (ii) establishing trust and credibility with their audience, and (iii) researching, assessing, and promoting goods and services that appeal to their audience.

10.     Over the past five years, Sydney has devoted hundreds of hours establishing her unique brand identity and credibility on Plaintiffs' Platforms and has grown her business into a multi-thousand dollar operation. In particular, Sydney has become well-known for promoting certain goods from Amazon, including household goods, apparel, and accessories, through original photo and video works created by Sydney.

11.     On average, Sydney spends upwards of ten hours a day, seven days a week, researching unique products and services that may fit her brand identity, testing and assessing those products and services, styling photos and videos promoting such products and services, and editing posts for Plaintiffs' Platforms.

12.     Sydney is the owner of each of her copyrighted photos, videos, and accompanying text and has been awarded Registration No. VA 2-380-575 for 140 copyrighted photos with the U.S. Copyright Office and at least the following registrations for video works (collectively with VA 2-380-575, the "Registered Works"):

a.  Reg. No. PAu 4-211-810 for a video titled "One Home Find You Need From Amazon"

b.  Reg. No. PA 2-462-341 for a video titled "AcrylicPanner.2023.04.17"

c.  Reg. No. PA 2-462-344 for a video titled "BagsHaul.2023.12.18"

d.  Reg. No. PA 2-462-346 for a video titled "CheckeredSet.2023.03.03"

e.  Reg. No. PA 2-462-351 for a video titled "BowTray.2023.01.15"

f.  Reg. No. PA 2-462-357 for a video titled "Loungewear.2023.10.11"

g.  Reg. No. PA 2-462-360 for a video titled "MakeupBag.2023.03.18"

h.  Reg. No. PA 2-462-362 for a video titled "PhoneCases.2023.10.22"

i.  Reg. No. PA 2-462-364 for a video titled "OliveTree.2023.06.01"

j.  Reg. No. PA 2-462-366 for a video titled "GiftsUnder50.2023.12.05"

k.  Reg. No. PA 2-462-374 for a video titled "ClosetReset.2023.01.02"

l.  Reg. No. PA 2-462-375 for a video titled "TheTox.2023.10.19"

m.  Reg. No. PA 2-462-377 for a video titled "TeddyBench.2022.11.07"

n.  Reg. No. PA 2-462-378 for a video titled "GiftsforHim.2023.11.10"

o.  Reg. No. PA 2-462-380 for a video titled "DreamPairs.2023.12.01"

p.  Reg. No. PA 2-462-382 for a video titled "FashionHaul.2023.01.18"

q.  Reg. No. PA 2-462-383 for a video titled "LampSetUp.2023.01.28"

r.  Reg. No. PA 2-462-385 for a video titled "FlowerTop.2023.05.20"

13.  As set forth in further detail herein and in **Exhibit A**, Defendants have infringed upon numerous of the Registered Works.

14.  On or around December 7, 2022, Sydney first met Defendant Alyssa Sheil in person in Austin, Texas. The parties met with the intent of supporting one another's business. On or around January 23, 2023, the parties again met in person to conduct a photoshoot together for the purpose of posting on their respective accounts. A few days later, to Sydney's surprise, Alyssa blocked Sydney from viewing her content on Instagram and TikTok.

15.  Around this time, the content posted on Defendants' Platforms changed ostensibly. Defendants began to publish posts that replicated Plaintiffs' posts and Plaintiffs' brand identity, featuring the same or substantially similar Amazon products promoted by Plaintiffs and

containing styling, themes, camera shots and angles, and text captions, among other elements, copying those of Plaintiffs' posts.

### INSTAGRAM

16.     Defendants, by and through the Instagram account @alyssasheill, have infringed on Plaintiffs' Registered Works by replicating photos, videos, products, captions, and styling of myriad Plaintiffs' posts on the @sydneynicolegiff Instagram account, which include content within the Registered Works as set forth in **Exhibit A**, pp. 14-25.

17.     For example, on October 19, 2023, Plaintiffs posted a video of Sydney visiting an institution called The Tox Shop in Austin, Texas as part of the shop's invite-only, early access offer to Sydney during an "Influencer Week." Plaintiffs' video featured footage of the doormat at the store's entrance branded "The Tox", a rack of clothing in the store, a neon light décor, and footage of Sydney receiving a cosmetic treatment. Plaintiffs' video is registered with the U.S. Copyright Office under PA 2-462-375.

18.     On or around November 3, 2023, two weeks after Influencer Week, Defendants posted a photo of Alyssa going to the very same institution featuring nearly identical footage of the doormat at the store's entrance branded "The Tox", the rack of clothing in the store, thee neon light décor, and footage of Alyssa receiving a cosmetic treatment, a still of which is displayed below and links to which are provided in **Exhibit A**:



19.    The examples provided herein are a mere sample of the posts published by Defendants that copy material posted by Plaintiffs anywhere from days to months prior. Screen captures and links of the above-referenced and additional infringing Instagram posts are shown in Ex. A, at pp. 14-25.

## TIK TOK

20.    Defendants have replicated Plaintiffs' posts on TikTok as well. For example, on or around December 12, 2023, Plaintiffs posted a slideshow of photos on TikTok featuring, *inter alia*, (1) the in-video title "my best amazon home purchases of 2023" with a row of neural-beige emojis above the text, (2) home office décor, (3) a cream Nespresso® machine and rimmed glasses, (4) a cream nonstick pan set, (5) acrylic calendars used for meal planning, (6) a wave patterned rug, and (7) round stacking tables. The photos contained in Plaintiffs' post are registered with the U.S. Copyright Office under Reg. No. VA0002380575:



21.    Two days later, on December 14, 2023, Defendants posted a nearly identical slideshow of photos on TikTok featuring, *inter alia*, (1) the in-video title "my best amazon home purchases of 2023" with a row of neural-beige emojis above the text, (2) home office décor, (3) the same or substantially similar cream Nespresso® machine and rimmed glasses, (4) the same or substantially similar cream nonstick pan set, (5) the same or substantially similar acrylic calendars used for meal planning, (6) the same or substantially similar a wave patterned rug, and (7) the same or substantially similar round stacking tables, photos of which are displayed:

8



@alyssasheil

22.     Plaintiffs' slideshow received over one million views on TikTok as of the time of this

filing. Defendants' slideshow had received at least 350,000 views on TikTok prior to being

removed by TikTok pursuant to a copyright infringement report.

23.     Defendants have also posted videos of Alyssa modeling women's apparel using the same

products and styling as videos earlier posted by Plaintiffs, including a beige skirt and strapless

top set. In these posts, Alyssa mimics not only the products themselves, but also Sydney's

poses and styling of the apparel.

24.     For example, on or around March 1, 2023, Plaintiffs posted a photo of Sydney wearing a

beige skirt and strapless top set, which is registered with the U.S. Copyright Office as VA

0002380575. Sydney paired the set with a flower clip around her neck and white cowboy boots,

9

neither of which were sold with the promoted skirt set. On March 17, 2023, Defendants posted

a video of Alyssa wearing and promoting the same skirt set in the same color. Defendants also

paired the set with a flower necklace and white cowboy boots, as displayed below:

 

**AMAZON STOREFRONT**

25.     On information and belief, Defendants have copied posts by Plaintiffs on not only TikTok

and Instagram, but on Amazon Storefront as well. Amazon Storefront is a customizable

webpage that permits followers of a certain influencer to peruse and shop for all product

recommendations posted by the influencer. Influencers may post photos, videos, and create

"Idea Lists" on their Amazon Storefront page. An Idea List is a curated list created by an

influencer that can be organized by any category the influencer wishes to organize the list. For

example, an influencer may curate kitchen tools and utensils in a list they title "Kitchen" and

women's apparel in a list titled "Clothing."

26.    Defendants have engaged and continue to engage in a pattern of replicating Plaintiffs' Idea Lists within days of Plaintiffs' posting. For example, on or around November 2023, Plaintiffs created a list called "CYB MON – HOME" for Amazon deals. By November 28, 2023 Defendants also created a list called "CYBER MONDAY [HOME/KITCHEN]" including a substantial number of the exact products listed on Plaintiffs' list, including, for example, a "Bojoy" brand full length wave mirror, a "famiware" brand four-piece white pasta bowl set, "Ezvalo" brand puck lights with remote control features, a "Repricone" brand buffalo checkboard grid throw blanket, and at least two dozen other of the exact same products featured in Plaintiffs' list, as displayed:



27.    Further, Defendants have copied posts by Plaintiffs on Amazon Storefront. For example, on or around November 21, 2023, Plaintiffs posted on Amazon Storefront a photo of Sydney wearing a women's two-piece cream colored sweater set, which is registered with the U.S. Copyright Office as VA 0002380575, with a link to the product on Amazon. On or around five

days later, Defendants posted a photo on Amazon Storefront of Alyssa wearing and promoting the same cream-colored sweater set, with a link to the same product on Amazon:



28.    Defendants' pattern of copying and promoting the very same products posted by Plaintiffs has extended to wooden coffee tables, women's clothing, including a sweat set and a fleece jacket, and cookware sets. Screen captures of the Amazon Storefront posts are shown in Ex. A, at pp. 2-13, 43, 46.

### BIO.SITE WEBSITES

29.    Defendants have replicated Plaintiffs' websites that are linked through TikTok and Instagram. On or around May 27, 2022, Plaintiffs created two websites through bio.site for TikTok and Instagram in order to provide followers with links to the promoted products. The bio.site platform permits users to customize their websites' backgrounds, font, caption, and links Screen captures of Plaintiffs' websites are displayed below:




30.    On December 15, 2023, Defendants created two websites through bio.site nearly identical to Plaintiffs' websites, including a similar beige background, link to the influencer's Amazon Storefront website, capitalized sans serif font, caption, and emoji. Screen captures of Defendants' websites prior to and after December 15, 2023 are displayed below:



## APPAREL

31.     On or around September 20, 2023, Plaintiffs published their own brand of apparel through Amazon's Merch on Demand platform, which permits users to create their own designs that are produced and shipped by Amazon. Plaintiffs titled their collection the "Wardrobe Essentials Club" and designed a number of black, white, and grey loungewear and athletic apparel. *See* Ex. A, at p.61.

32.     On or around October 27, 2023, Defendants also published their own brand of apparel through Amazon's Merch on Demand platform titled "Retail Therapy Club". Defendants also designed a number of black, white, and grey loungewear and athletic apparel.

33.     Many of the articles of apparel in Defendants' Merch on Demand collection featured substantial similarities to those of Plaintiffs' collection, including similar placement of text and script font on black hooded sweatshirts. *See id.*

34.     From at least as early as January 2023 until the time of this action, Defendants have posted at least twenty posts on Instagram, at least nineteen posts on TikTok, and at least twelve posts on Amazon Storefront that directly replicate the products, poses, and/or styling of posts by Plaintiffs on the same respective platforms. Defendants' duplicative posts perform, on average, more successfully than nonduplicative posts by Defendants and gain higher views and interactions on the respective platforms.

35.     Plaintiffs have tried to remedy Defendants' ongoing infringing behavior through contacting Defendants directly and, when such contact proved unfruitful, through submitting copyright infringement reports to Amazon, Meta (which governs such claims for content posted on Instagram), and TikTok. On or around November 31, 2023, Plaintiffs, by and through their

14

appointed counsel, sought to cause Defendants to cease and desist their infringing behavior through a demand letter describing the same. Defendants failed to take any action. On or around January 29, 2024, Plaintiffs, by and through the undersigned appointed counsel, again made demand on Defendants to cease and desist. Defendants denied any infringing behavior and have continued to post infringing content.

36.    On or around January 30, 2024, Plaintiffs submitted copyright infringement reports reporting fifteen posts to TikTok, eighteen posts to Instagram, and fourteen posts to Amazon. Each platform promptly removed the infringing content. On February 2, 2024, Plaintiffs submitted copyright infringement reports reporting an additional thirteen posts to TikTok. Despite the platforms' removal of such content as infringing, Defendants have *reposted* certain photo works, after initial posts were removed, that infringe upon Plaintiffs' Registered Works. *See* Ex. A pp. 43-49. In light of Defendants' ongoing willful infringement, Plaintiffs now submit this lawsuit.

## COUNT ONE

### Federal Copyright Infringement — 17 U.S.C. § 501 *et seq.*

37.    Plaintiffs reallege and hereby incorporate by reference the allegations made in the foregoing paragraphs of this Petition.

38.    The owner of a copyright has the exclusive rights to reproduce the copyright work. 17 U.S.C. § 106. Here, Plaintiff Sydney Nicole Gifford owns the copyright to each photo, video, text caption, and in-video text that she authored and posted on Plaintiffs' Platforms. Sydney is the owner of each Copyright Registration included in the Registered Works and copies of such certificates showing the same are submitted as **Exhibit B**.

39.     On information and belief, one or more Defendants had access to and copied, reproduced, distributed, adapted, publicly displayed copies of, made derivative works of, and/or otherwise exploited Plaintiff's Registered Works for financial gain without Plaintiff's approval, in violation of Plaintiff's copyrights.

40.     Specifically, Defendants have infringed Plaintiff's copyrighted materials by copying constituent elements of Plaintiff's works that are original and by reproducing Plaintiff's copyrighted works. In at least thirty photo posts across Defendants' Platforms, Defendants have featured identical products featured in posts on Plaintiffs' Platforms with identical styling, tone, camera angle, and/or text. *See* Ex. A. In addition, Defendants have posted nearly identical videos to each of Plaintiffs' motion picture/video Registered Works. *See id*. This conduct, individually and cumulatively, constitutes infringement of Plaintiff's Registered Works and their exclusive rights under copyright in violation of 17 U.S.C. § 501 et seq. The acts of infringement are set forth in Ex. A, pp. 2-49.

41.     Each unauthorized use of Plaintiff's copyrighted work constitutes a separate and distinct act of infringement. Each instance of loading the infringing content onto a user's end device constitutes a separate and distinct act of reproduction by Defendants and therefore infringement.

42.     The acts of infringement by Defendants have been willful, intentional, and purposeful, in reckless disregard of and with indifference to the rights of Plaintiffs. Defendants knew the posts were directly copying Plaintiffs' posts. Further, Defendants have reposted infringing content that violates Plaintiff's Registered Works even after initial posts by Defendants were removed by TikTok, Instagram, and/or Amazon pursuant to copyright infringement reports. *See* Ex. A, pp. 43-49.

43.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered economic and other damages for which Plaintiffs now sue. Plaintiffs have suffered monetary loss due to the unlawful infringement of the Registered Works.

44.     Pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to recover their actual damages and all profit each Defendant has made because of their wrongful conduct for each infringement of the Registered Works. In the alternative, as applicable pursuant to 17 U.S.C. § 504(c)(1), Plaintiffs are entitled to elect at any time before final judgment is rendered, to recover an award of statutory damages for all infringements with respect to any one work in the Registered Works in the sum of not more than $30,000 as the Court considers just; and if the Court finds the infringement was committed willfully, the Court in its discretion may increase the award of statutory damages to  a sum of not more than $150,000.

45.     Pursuant to 17 U.S.C. § 505, Plaintiffs request an award of its full attorneys' fees and costs.

46.     Plaintiffs are further entitled to injunctive relief and an order compelling the removal and/or impounding of all infringing materials distributed, published, or provided to others by Defendants. Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things: (i) Plaintiffs' copyrights are unique and valuable property that have no readily determinable market value; (ii) the infringement harms Plaintiffs such that Plaintiffs could not be made whole by any monetary award; and (iii) Defendants' wrongful conduct, and the resulting harm to Plaintiffs, is continuing.

## COUNT TWO

### Vicarious Copyright Infringement — 17 U.S.C. § 501 *et seq.*

47. Plaintiffs reallege and hereby incorporate by reference the allegations made in the foregoing paragraphs of this Petition.

48. Each Defendant has, and had, the right and ability to supervise the infringing content. Defendants have, at all times relevant to this action, controlled the Instagram, Amazon, bio.site, and TikTok accounts belonging to @alyssasheill, @alyssasheil, and Alyssa Sheil, respectively. Defendants have exercised the right and ability to supervise what content is posted on the platforms and which users follow the platforms.

49. Each Defendant has, and had, an obvious and direct financial interest in the exploitation of copyrighted materials. Each instance of a third party accessing, downloading, interacting with, and/or viewing the infringing content contributed to a higher performance rate of Defendants' posts, including higher views, engagement, and sales of products featured in the infringing content. This directly corresponds to higher commission obtained by Defendants.

50. The acts and conduct of Defendants, as alleged above, constitute vicarious copyright infringement.

51. The acts of infringement by each Defendant have been willful, intentional, and purposeful, in reckless disregard of and with indifference to the rights of Plaintiffs.

52. As a direct and proximate result of the Defendants' actions, Plaintiffs have suffered economic and other damages for which Plaintiffs now sue. Pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to recover their actual damages and all profits each Defendant has made because of their wrongful conduct.

53. Alternatively, pursuant to 17 U.S.C. § 504(c)(1), Plaintiffs are entitled to elect any time before final judgment is rendered, to recover an award of statutory damages for all

infringements with respect to any one of the Registered Works, as applicable, in the sum of not more than $ 30,000 as the Court considers just, and if the Court finds the infringement was committed willfully, the Court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.

54.    Pursuant to 17 U.S.C. § 505, Plaintiffs request an award of their full attorney fees and costs.

55.    Plaintiffs are further entitled to injunctive relief and an order compelling the removal and/or impounding of all infringing materials distributed, published, or provided to others by Defendants. Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things: (i) Plaintiffs' copyrights are unique and valuable property that have no readily determinable market value; (ii) the infringement harms Plaintiffs such that Plaintiffs could not be made whole by any monetary award; and (iii) Defendants' wrongful conduct, and the resulting harm to Plaintiffs, is continuing.

### COUNT THREE

### Digital Millennium Copyright Act Violation — 17 U.S.C. § 1201 *et seq.*

56.    Plaintiffs reallege and hereby incorporate by reference the allegations made in the foregoing paragraphs of this Petition.

57.    Section 1202(c) of Title 17 defines Copyright Management Information ("CMI") to include, among other things, "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright" and "[i]dentifying numbers or symbols referring to such information or links to such information."

58.    Courts have recognized identifying information of copyrighted work, such as file names and information appearing under a copyrighted work, to constitute CMI. *See, e.g., Energy*

*Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 277 (S. D. Tex. Dec. 16, 2020 – Houston) ("CMI is defined broadly").

59.     Each of the Registered Works has been posted by Plaintiffs with Plaintiffs' CMI properly appended, under the name "Sydney Nicole" and/or the social media handle "@sydneynicolegiff" on Plaintiffs' Platforms. *See* **Exhibit A**.

60.     Section 1202(a) of Title 17 prohibits any person who knowingly and with the intent to induce, enable, facilitate, or conceal infringement, (1) provides copyright management information that is false, or (2) distributes or imports for distribution copyright management information that is false. Courts have routinely found § 1202(a) to apply to derivative works and a defendant's own works, in addition to a plaintiff's original works. *See, e.g., Huffman v. Activision Publ'g, Inc.*, 2020 WL 8678493, at *12 (E.D. Tex. Dec. 14, 2020), report and recommendation adopted, 2021 WL 2141352 (E.D. Tex. May 26, 2021).

61.     Section 1202(b) of Title 17 further prohibits any person who, without the authority of the copyright holder, (1) intentionally removes or alters CMI, (2) distributes products knowing that CMI has been removed or altered without authority of the copyright owner or the law or (3) distributes works or copies of works knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under the Copyright Act. The DMCA may properly apply even when an infringing work is not identical to the original. *See, e.g., ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 417 (S.D. Tex. March 30, 2023).

62.     Defendants violated § 1202(a) of Title 17 when they knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided CMI that was false on each of the Infringing Works, namely, the "Alyssa Sheil", "@alyssasheil", and/or "@alyssasheill"

usernames. Defendants further published and distributed such works with false CMI via Defendants' Platforms, examples of which are set forth in **Exhibit A**.

63.     Defendants violated § 1202(b) of Title 17 when they recreated the Registered Works and published the replicated posts on Defendants' Platforms, removing Plaintiffs' CMI from the posts. Defendants further published and distributed the unauthorized posts copying Plaintiffs' Registered Works under the names "Alyssa Sheil", "@alyssasheil" or "@alyssasheill" without any reference to Plaintiffs. Examples of such posts are set forth in **Exhibit A**.

64.     Defendants knew that CMI had been removed from Plaintiffs' copyrighted work without Plaintiffs' authority and knew that such publication and distribution would induce, enable, facilitate, or conceal an infringement. Such intentional conduct did result in infringement of Plaintiffs' intellectual property. Defendants viewed Plaintiffs' content on Plaintiff's Platforms and intentionally replicated and recreated the content to publish on Defendants' Platforms.

65.     Defendants' conduct was done willfully, intentionally, and in reckless disregard of Plaintiffs' rights.

66.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered economic and other damages for which Plaintiffs now sue. Plaintiffs have suffered monetary loss due to the Defendants' conduct.

67.     Pursuant to 17 U.S.C. § 1203(c)(2), Plaintiffs are entitled to its actual economic and other damages resulting from Defendants' violations, together with the profits they have earned. Alternatively, pursuant to 17 U.S.C. § 1203(c)(3), Plaintiffs are entitled to elect statutory damages in the sum of not more than $25,000 for each violation of §1202.

68.    Pursuant to 17 U.S.C. § 1203(b)(4) & (5), Plaintiffs request an award of their full attorneys' fees and costs.

## COUNT FOUR

## Trade Dress Infringement

69.    Plaintiffs reallege and hereby incorporate by reference the allegations made in the foregoing paragraphs of this Petition.

70.    Trade dress refers to the total image and overall appearance of a particular good or service and may include features such as the color, color combinations, textures, and graphics of the good or service in question. Courts have extended trade dress protection to the overall "motif" of a restaurant, layout and appearance of a mail-order catalog, and even the sight and feel of a website. *Test Masters Educ. Servs. v. State Farm Lloyds*, 791 F.3d 561, 565 (5th Cir. 2015).

71.    Plaintiffs have a distinctive trade dress comprised of monochrome cream, grey, and neutral-beige colors coupled with modern, minimal, sophisticated styling of Amazon products via Plaintiffs' Platforms. Markers of Plaintiffs' distinct trade dress include: promotion of products only falling within the monochrome cream, grey, and neutral-beige color scheme; styling of products in modern, minimal backdrops; creation of content featuring Sydney herself; and Sydney's distinct relatable way of speaking to followers.

72.    Plaintiffs have gained recognition for their distinctive trade dress and have gained nearly half a million followers on TikTok alone. Plaintiffs' trade dress is primarily nonfunctional and serves only to differentiate Plaintiffs from other sources.

73.    Defendants have intentionally copied and attempted to replicate Plaintiffs' trade dress. Defendants have directly copied and infringed on Plaintiffs' intellectual property rights by

22

promoting the same monochrome cream, grey, and neutral-beige products featured on Plaintiffs' Platforms with the same modern, minimal, and sophisticated styling and backdrop. Defendants have further tried to imitate Sydney's appearance and sound by copying Sydney's haircut, apparel, and way of speaking.

74.     There is a likelihood that Defendants' trade dress will lead to customer confusion. Defendants' replication of Plaintiffs' trade dress will confuse followers as to the source of the goods and services. Defendants' mimicry of Plaintiffs' appearance and the overall image associated with Plaintiffs' brand, such as the content and appearance of Plaintiff's Platforms, the parties' respective bio.site websites, and the parties' respective apparel lines, causes the two to be so similar that followers will be and are unable to differentiate between the two. On information and belief, actual instances of consumer confusion have occurred.

75.     The likelihood of confusion is further exacerbated by the algorithm employed by social media platforms such as TikTok, which recognizes colors, shapes, and stylings, among other factors, to suggest videos users may be interested in. Users may watch one of Plaintiffs' videos and immediately be recommended one of Defendants' videos because of the stark similarities in trade dress and feature of identical products. In such circumstance, a user is likely to confuse the two videos as coming from the same source.

76.     By reason of the foregoing, Defendants are liable for monetary damages plus interest.

**COUNT FIVE**

**Misappropriation**

77.     Plaintiffs reallege and hereby incorporate by reference the allegations made in the foregoing paragraphs of this Petition.

78.    Defendants appropriated Plaintiff Sydney Nicole Gifford's likeness for the value associated with it. Defendant Alyssa imitated outfits, poses, hairstyles, makeup, and the manner of speaking of Sydney to produce a virtually indistinguishable replica of Sydney's likeness. Defendant Alyssa has gone so far as to obtain a flower tattoo on her upper arm that is nearly identical to a flower tattoo Sydney has on her upper arm. *See* Ex. A, at pp. 51-52. Each element is a distinctive characteristic associated with Sydney in her business and patrons of the Amazon Influencer Program can recognize Sydney from the combination of such characteristics showcased in her content.

79.    Plaintiff can be identified from the publication. Sydney has obtained publicity and fame for her likeness, including her outfits, poses, hairstyles, makeup, and voice, and has gained over half a million followers on Plaintiffs' Platforms. It is possible for Plaintiffs' followers and others who are familiar with Sydney to identify her as the individual whom Defendants' posts appropriate.

80.    Defendants received a benefit from the appropriation. The posts on Defendants' Platforms that appropriate Sydney's likeness have performed more successfully than other posts by Defendants, gaining at least triple the views on average. Based on the commission model of the influencer industry, Defendants have gained monetary compensation for this increased performance.

81.    Defendants' wrongful acts caused injury to Plaintiffs, which resulted in the following damages: monetary loss due to the Defendants' appropriation and mental anguish damages from the unlawful use of Sydney's likeness. Sydney has suffered mental anguish from Defendants' misappropriation of her likeness and such misappropriation has negatively impacted Sydney's productivity and creativity with respect to her influencer work.

## JURY DEMAND

82.    Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and

demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues so

triable.

## CONDITIONS PRECEDENT

83.    All conditions precedent to Plaintiff's claim for relief have been performed or have

occurred.

## DAMAGES

84.    As a direct and proximate result of defendant's conduct, plaintiff suffered the following

injuries and damages: actual damages, statutory damages pursuant to 17 U.S.C. §§ 504(c)

and 1203, lost profits, lost earnings, and mental anguish in the past and future.

## PRAYER

**WHEREFORE**, Plaintiffs Sydney Nicole LLC and Sydney Nicole Gifford

respectfully request that Defendants Alyssa Sheil LLC and Alyssa Sheil be cited to appear and

answer and that upon a final hearing of this matter, that the Court enter judgment in favor of

Plaintiffs against Defendants, jointly and severally, and award to Plaintiffs:

(a)    Damages in an amount to be determined at trial, plus the amount of

Defendants' profits attributable to the infringement, or in the alternative, statutory

damages, as authorized by 17 U.S.C. § 504(c), as applicable;

(b)     Additional damages, as applicable, for willfully infringing Plaintiffs' copyright, as authorized by 17 U.S.C. § 504(c)(2);

(c)     Prejudgment and post-judgment interest at the maximum permissible rate;

(d)     Costs of court;

(e)     Attorneys' fees; and

(f)     Such other and further relief to which Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

By: /S/ Kirsten Kumar
Kirsten Kumar
Texas Bar I.D.: 24126104
Sanjeev Kumar
Texas Bar I.D.: 24073790
kkumar@thekumarlawfirm.com
skumar@thekumarlawfirm.com
**The Kumar Law Firm PLLC**
2110 Ranch Road 620 S, #341060
Lakeway, TX 78734
Phone: (512) 960-3808
**ATTORNEYS FOR PLAINTIFFS**